**Oscar Jacobs et al., Defendants in Error, v. Atlas Insurance Company, Plaintiff in Error.**

## Gen. No. 14,306.

1. INSURANCE—*when execution of binder authorized.* *Held*, under the evidence in this case, that the "binder" in question was so executed as to become the obligation of the insurance company against whom the action was brought.

2. INSURANCE—*when cancelation of binder ineffective.* *Held*, that the attempted cancelation of the binder in suit was not effective and that a cancelation could not lawfully have been made except by the giving of five days' notice as provided in said binder.

3. INSURANCE—*binder contract construed.* *Held*, that the binder contract in suit provided for insurance to the amount of $500 and not to the amount of $5, as contended by the defendant company.

4. INSURANCE—*effect of failure to state premium in binder contract.* *Held*, that the binder contract in suit was not invalid because it did not state the premium to be paid by the insured; in the absence of a special agreement the company would be entitled to receive and the insured would be liable to pay the usual and customary rate.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed May 11, 1909.

**Statement by the Court.** The Atlas Insurance Company, an Iowa corporation, prosecutes this writ

of error to reverse a judgment rendered against it for $465.19 in favor of the firm of Jacobs & Smittman, composed of Oscar Jacobs and Jack Smittman. The judgment was rendered in the Municipal Court on November 27, 1907, for fire loss where what is, in insurance parlance, called a "binder" had been issued.

Jacobs & Smittman were in business at 298 & 300 Wabash avenue, Chicago, as manufacturers of artificial flowers for the millinery business. The Atlas Insurance Company is a corporation not licensed or authorized to do business in the state of Illinois. William M. Umbdenstock was in business as a fire insurance agent at 159 La Salle street, in Chicago, doing business as W. M. Umbdenstock & Co. Mr. Umbdenstock had an agreement, executed August 21, 1906, with defendant, Atlas Insurance Company, to act as its agent and representative, the material parts of which are as follows:

"This Agreement made and entered into this 21st day of August, 1906, by and between the Atlas Insurance Company, of Des Moines, Iowa, party of the first part, and W. M. Umbdenstock & Co., of Chicago, Illinois, party of the second part:

First: The party of the first part does hereby agree to appoint the party of the second part exclusive agents, with binding power, for writing surplus lines in the Atlas Insurance Company, for the United States except in the State of Iowa, Arkansas, Tennessee and Mississippi, for writing policies on risks acceptable to the party of the first part."

[Here follow provisions for compensation which are 25% of the net premiums, 10% of whatever profits may arise annually in the conduct of the business written by Umbdenstock, to be estimated each 12 months after a certain date, and 15% of the net premium for office expenses.]

"Accounts current for all business written and premiums thereon shall be forwarded monthly by the party of the second part, not later than the 15th of the month following the month in which the business was written and checks for same shall follow within

sixty days thereafter, it being understood that the party of the second part shall be responsible to the party of the first part for the premiums on all policies issued.

"The party of the second part agrees to represent faithfully and to put forth their very best endeavors in securing a desirable amount and class of business, and that applications shall be submitted to the party of the first part and policies issued by said party of the first part.

"The term 'surplus lines' is understood to mean only risks that have exhausted the capacity of all Companies regularly admitted to the state in which the risk is located, it being the intent of the party of the second part to accept only strictly surplus business, in no case, less than the full tariff rate on rated risks."

Mr. Umbdenstock's letter reads here as follows:

"Members of Chicago Board of Underwriters.
Insurance Agency,

### W. M. UMBDENSTOCK & CO.
Suite 450-451 National Life Building
159 La Salle Street
Chicago.

Facilities for placing Large Lines for Agents anywhere in the United States General Agents

Cook County Agents
Albany of New York
German of Peoria
Ohio German of Ohio
Commercial of Texas
Florida Home, Florida
Southern National of Texas

Des Moines of Des Moines, Ia.
Atlas Fire of Des Moines, Ia.
Fidelity Fire of Des Moines Ia.
Acme of Cedar Rapids, Iowa.
Florida Home of Florida.
Commercial of Texas.
Southern National of Texas."

Telephones:
Central 4933
Auto 4933
Cable Address 'Umbden' Chicago.
A. B. C. Code.
Brokerage Dep't.

These letter heads were used by Mr. Umbdenstock in his correspondence and he used them to the extent of probably one a day in corresponding with the Atlas Insurance Company.

Mr. Umbdenstock had complied with "An Act providing for licenses to agents to procure fire policies in unauthorized corporations" &c. approved May 14, 1903, and in force July 1, 1903, Laws 1903, p. 221. It is a general custom in the city of Chicago in the insurance business and among general insurance agents to issue what are called "binders." The "binder" is a written instrument providing for insurance temporarily from the time application to an insurance agent for insurance is made until a policy is issued or the risk is passed upon and declined by the company whose representative has issued the "binder." Umbdenstock had been issuing "binders" as representative of the defendant company, on what he considered surplus lines, ever since he began representing the company. A. Loeb & Sons is also an insurance agency on La Salle street in Chicago. With that firm Umbdenstock had been doing business for ten years, they had an account with him and the "binder" in question was issued at their request. It was customary for Umbdenstock and A. Loeb & Sons to place risks for each other in their various companies and make monthly settlements of their accounts. On April 2, 1907, E. E. Jaycox, a solicitor of insurance business in the employ of A. Loeb & Sons, was procuring insurance for the plaintiffs, who were regular customers, to the extent of $2000. They paid their premium to A. Loeb & Sons on May 1, 1907. Jaycox obtained in the aggregate $1500 from three other companies and then the "binder" here in question from Umbdenstock & Co. When Jaycox went to the office of Umbdenstock & Co. on April 2, in regard to the $500 of risk he had, remaining to be placed, Umbdenstock was out of the office but Ross B. Whitney, chief clerk, was in charge of the office and he signed a "binder" and gave it to

Jaycox. Umbdenstock tells us that the issuance of the "binder" was reported to him so that he was informed thereof at the time of issuance. He also states it is a "sort of general understanding—custom—that the chief clerk" has the authority to issue the "binders" and "I permitted him to do it from time to time and never rejected any 'binders' that he signed." The "binder" is upon a printed form and is as follows:

"The Chicago Board of Underwriters of Chicago
Form of Binder Adopted January 11, 1906.

Pending the issue of policies or certificates, binders good for not exceeding thirty days, may be issued, covering the risk in the interim, under the following form, but not otherwise:

Binder.

Chicago,..........190

In consideration of the stipulations herein contained, the several insurance companies (each acting and contracting for itself and not one for another) whose names are entered hereon by their respective representatives, together with their signatures as such, are hereby severally bound to Jacobs & Smittman, as insurers for........ days, to-wit: from 12 o'clock noon of April 2, 1907, until 12 o'clock noon of............ 190...., against direct loss or damage by fire, to an amount not exceeding the sum set opposite their several names by their respective representatives, to the following described property, while located and contained and described herein, and not elsewhere, to-wit: mdse., 298-300 Wabash Ave., Chicago, Ill.

It is hereby stipulated and agreed, that this binder is issued subject to all the terms and conditions of what is commonly known as the Standard Fire Insurance Policy of the State of New York, which are hereby made a part hereof to the same extent as if fully set forth herein; and to the payment of such premiums for the several insurances entered hereon, as may be found to be due to the several insurers by their respective representatives, which, in the event of loss before the expiration of this binder, shall be fixed at

the full annual premiums for the respective sums insured.

Whenever the policy of any of the insurers is issued in lieu of its undertaking under this binder, its obligation hereunder shall cease and be void.

In no event shall this binder continue in force beyond the time of expiration stated herein.

| Name of Insurance Company. | Amount Insured, in writing. | Amount in Figures. | Signatures of representatives on behalf of companies. |
|---|---|---|---|
| Atlas. | | 5 00 | W. M. U. Ross W." |

A copy of a Standard Fire Insurance Policy of the State of New York was also introduced in evidence.

Upon receiving the "binder" Jaycox telephoned the result of his efforts to Jacobs & Smittman, and took the binder to A. Loeb & Sons' office where it remained until after the loss here in question occurred, whereupon Jacobs & Smittman obtained it to settle the loss. Before the fire Jaycox made several inquiries at the office of Umbdenstock regarding the coming of a policy and once he saw Umbdenstock himself, who said he would write concerning it.

Umbdenstock testified, as to the custom in the transaction of business between himself and the company, that in the usual course of his business with the company, as he put it, he was supposed to report every day and, as a rule, the company either sent him a policy or rejected the risk in two, three, four or five days; never more than four or five days. He kept a memorandum and himself looked over all applications before they were sent to the company.

On April 22nd following, the place of Jacobs & Smittman was destroyed by fire. Proof of loss was made and delivered to Umbdenstock & Co. The company denied liability. There was substantially a total loss and it appears to be $3762.72 in amount, with a total insurance of $4000. The fire, as shown by the proof of loss, made by Jacobs & Smittman, occurred at 3:44 p. m. on April 22nd, which was a Monday. In the morning of that same Monday, Umbdenstock & Co.

received a letter from the Atlas Insurance Company, dated April 20th, declining the Jacobs & Smittman risk and, after having read that letter, Whitney, the chief clerk of Umbdenstock & Co., that same morning stepped over to A. Loeb & Sons' office and informed them that the company had declined the risk.

CHARLES B. OBERMEYER, for plaintiff in error.

BLUM & BLUM, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

We have no doubt but what the "binder" in question was so executed as to become an obligation on the part of the Atlas Insurance Company. Umbdenstock had authority, his chief clerk signed it and before it was forwarded to the company, Umbdenstock obtained information of its issuance and he thereby ratified the signing by the chief clerk.

On its face the "binder" purports to be a preliminary and temporary contract for present insurance which contemplated the making of a full and definite contract in the form of a policy. We think that the intention of the defendant, as shown by the language of the "binder," and the circumstances under which it was issued, was to insure the plaintiffs for a period not exceeding thirty days from April 2, 1907, unless within that time the contract thereby made was cancelled, or a policy was issued and therefore, that the contention that no insurance was effected by the "binder" because the date at which the insurance thereby effected was to expire was not expressly stated, cannot be sustained.

The "binder" contains the following provisions: "It is hereby stipulated and agreed that this 'binder' is issued subject to all the terms and conditions of what is commonly known as the Standard Fire Policy of the State of New York which are hereby made a part hereof to the same extent as if fully set forth

herein." The provisions of said form of policy in relation to cancellation are as follows:

"This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled * * * the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice, it shall retain only the *pro rata* premium."

The defendant made no attempt to cancel the policy until April 22, the day of the fire, and then only by a verbal notice given by Whitney, the clerk of Umbdenstock, to Schillo, the clerk of Loeb & Sons. Whitney testified that when he told Schillo that the Atlas company had declined the risk, Schillo said, "he would leave us off with a five day binder, five day cancellation notice or upon replacing."

We think that the company, under the provisions of the "binder" and the Form of Policy, which was made a part of the "binder," had only the right to cancel by giving five days' notice, and as no such notice was given, the "binder" was in force at the time of the fire.

The amount of the insurance is stated in the "binder" as follows:

| "Amount insured in writing. | | Amount in figures. | | |
|---|---|---|---|---|
| | | 5 | 00 | " |

In Lake View v. LeBahn, 120 Ill. 92, 99, it was held that the figures 50. used in a plat to indicate the width of a street represented, not feet, inches, nor chains, but links. The unit of amount is a dollar. We think the figures 500 as used in the "binder" represent dollars. We also think that those figures represent and mean not five but five hundred. To hold that they represent and mean five would be to give to the vertical line, after the figure 5, the force and effect of a decimal point. We think that the "binder" sufficiently

states that the amount thereby insured was five hundred dollars.

We do not think that the "binder" can be held defective and invalid because it does not state the premium to be paid by the insured. In the absence of a special agreement the defendant would be entitled to receive and the plaintiffs liable to pay the usual and customary rate.

We do not think that under the evidence the damages can be held excessive. The testimony on the trial tended to show a loss of merchandise of over four thousand dollars, with four thousand dollars of insurance. We think the evidence is sufficient to support the finding and judgment, and the judgment of the Municipal Court will be affirmed.

*Affirmed.*