(No. 30176.—

SOPHIA SMITH *et al.,* Appellants, *vs.* EVELYN PETERS *et al.,* Appellees.

*Opinion filed September 18, 1947—Rehearing denied Nov. 17, 1947.*

G. A. Bosomburg, of Chicago, for appellants.

Alfred Roy Hulbert, of Chicago, for appellees.

Mr. Justice Fulton delivered the opinion of the court:

This appeal by the appellants, who are also designated as contestants, questions the validity of the last will and testament of Caroline M. Dodge. The testator owned real estate at the time of her death and, therefore, a freehold was involved and the appeal perfected to this court. Caroline M. Dodge died May 15, 1945, leaving her surviving three sisters, Ida Bohl, Sophia Smith and Elizabeth Wildhagen; and Marion Wagner and Evelyn Cox, the daughters of her deceased sister, Mary Burhman. Her sister, Ida Bohl, died December 27, 1945, leaving as her heirs and next of kin, Evelyn Peters, Laura Bohl, Olive Wrixon and Caroline Bohl.

The document purporting to be the last will and testament of Caroline M. Dodge was admitted to probate in Cook County on July 10, 1945, and Evelyn Peters was appointed executrix by the court. Mrs. Dodge owned real estate and personal property valued at approximately $20,000, and by her will she made bequests of $200 each

to a friend, a grandniece, her sister Sophia Smith, her sister Ida Bohl, and bequests of $100 each to Marion Wagner and Evelyn Cox, the daughters of her deceased sister, Mary Burhman. She cancelled and gave to her sister, Elizabeth Wildhagen, and her niece, Marie Wildhagen Miller, a note in the amount of $1450, signed by them, which was payable to Mrs. Dodge. The residue of the estate was given equally to Laura Bohl Daul and to Evelyn Peters, daughters of her sister, Ida Bohl. This will was dated November 9, 1943, and was witnessed by three witnesses, two of them being attorneys practicing in Chicago and the other witness being a secretary of one of the attorneys.

The complaint, filed in the circuit court of Cook County, contested the validity of the will on three grounds. First, that the purported will was, in fact, not the last will and testament of the deceased but was a fabrication. Secondly, that the testatrix was not mentally competent at the time of making the will. Thirdly, that Evelyn Peters exercised undue influence on the testatrix, resulting in the making of this will.

The answer denied the allegations of the complaint and upon a hearing the contestants produced evidence in support of claims set out in the complaint. At the conclusion of the contestants' evidence, the defendants made a motion for a directed verdict and the court sustained this motion and instructed the jury to return a verdict in favor of the proponents of the will. Thereafter the court entered a decree on the verdict, dismissed the complaint for want of equity and taxed the costs of the proceeding against the contestants.

It is urged that the court should not have taken the matter from the jury.

The contestants offered seven witnesses who testified regarding various evidentiary facts. Mary Howard, manager of a safety-deposit vault for more than 20 years, identified the testatrix's signature on signature cards of

the safety-deposit vault. Leonard W. Tubbs, a nephew of the testatrix, testified with reference to conversations he had had with his aunt during 1943 and 1944 regarding the making of a will. He stated that she had been ill in 1942, and after that illness she was unable to converse as previously and that her handwriting was not as steady as it had been. He testified regarding statements made by the testatrix to the effect that Evelyn Peters had been taking care of her things for her and that Evelyn had asked the testatrix for $5000 or $6000 and that testatrix refused to give it to her and, after she had so refused, Evelyn's visits became less frequent. His aunt told him that in order to get some co-operation from Evelyn in handling her affairs she had gone to Evelyn's lawyer and drawn up a will as Evelyn had wanted her to do but that she was not satisfied with this will. He further told about another conversation in 1944 in which his aunt told him that she had gone with a lady friend to a lawyer's office and made a new will and that she expressed pleasure to know that the Bohls would be surprised when they found out what was in the new will. However, nothing in his testimony indicates that the testatrix was mentally incompetent during 1943 or 1944.

Bertha Flotow testified to the effect that she had had several conversations with the testatrix with reference to her will and that about six months before she died the testatrix told her that she had made a new will and that she stated: "I took Nettie Clark with me to sign the will and will the Bohls be surprised." She stated that the testator did not believe in letting one person have all of her estate. There is no testimony by this witness indicating that the testatrix was not of sound mind during 1943 and 1944. Another witness, Anna Smith, also testified that she had been acquainted with the testatrix for twelve years, her husband being the son of one of the contestants, Sophia Smith. Her testimony was to the effect that the Bohl

family had not treated the testatrix as well as the testatrix thought they should. However, her testimony does not in any way intimate that the testatrix was of unsound mind during the years 1943 or 1944. The deposition of Ellen Williamson, who lived in the same building with testatrix, was read. She testified that after testatrix's husband died in March, 1943, Mrs. Dodge failed mentally and that the testatrix did not realize that her husband was dead. She also testified that testatrix informed her that she had made one will but that she did not like the terms of it and she had made another will and that Mrs. Clark had gone with her to sign the new will.

Fred Wisch testified that Mrs. Dodge mentioned something to him about making a new will and she told him she had taken Nettie Clark with her to sign as a witness and that when the Bohls hear about the new will they will be surprised. This statement was attributed to the testatrix about three or four months before she died. Elaine Kautz testified as to the handwriting of the testatrix. This was all the testimony which was produced by the contestants.

The contestants argue that the will which has been admitted to probate actually is not the will of the decedent because it was not witnessed by Nettie Clark. A great deal is said by the proponents of the will in their brief about Nettie Clark, the supposed witness to the will, having submitted to an adverse examination prior to the trial of the cause and what she said in that examination. They also assert that Nettie Clark was in the courtroom during the trial of this cause but was not called to the witness stand, but these facts are entirely outside of the record and cannot be considered on this appeal. We believe, however, that the evidence on this point, though indicating that Mrs. Dodge made statements to the effect that she had made another will, does not establish that there was, in fact, another will and does not even tend to show that

there was another will, particularly in view of the fact that no specific charge is made as to the existence of another will, the contents thereof or any facts regarding its execution.

There is no testimony in the record taken in its most favorable aspects for the contestants, indicating that the testatrix was of unsound mind at the time this will was made. The contestants' own testimony indicates that she was approximately 74 years of age and that she possessed the normal faculties of a woman of such years.

There is no testimony in the record indicating any undue influence on the part of Evelyn Peters other than the testimony of statements made by testatrix that Evelyn Peters had at one time asked her for $5000 or $6000 and testimony indicating that Evelyn Peters managed business affairs of the testatrix prior to her death. No proof was submitted indicating that Evelyn Peters was present at the time this will was signed or that she possessed such influence over the testatrix at the time the will was signed as to preclude testatrix from manifesting her own desires by this will. Undue influence which will void a proved will must be directly connected with the execution of the instrument itself. (*Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Downey* v. *Lawley,* 377 Ill. 298.) The evidence indicates that the testatrix knew the natural objects of her bounty, that she knew the kind and character of her property and that she intended to make disposition of the property in accordance with some plan or desire that she had. Under the circumstances, we cannot believe that there was any evidence in the record with all its reasonable inferences taken in the aspect most favorable to the contestants which may be said to be sufficient to support the allegations of the complaint.

For the reasons stated in this opinion, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*