LISA MAXTON, Adm'r of the Estate of Phyllis Maxton, Deceased, *et al.*, Plaintiffs and Counterdefendants-Appellants, v. CHUCK C. GAREGNANI, Defendant and Counterdefendant (Honda Motor Company, Ltd., *et al.*, Defendants; Allstate Insurance Company, Defendant and Counterplaintiff-Appellee).

Fifth District   No. 5—92—0114

Opinion filed January 20, 1994.

Harris, Lambert, Howerton, Dorris & Eckiss, of Marion, for appellants.

Bleyer & Bleyer, of Marion, and Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Carol Proctor, and Rebecca R. Haller, of counsel), for appellee.

JUSTICE MAAG delivered the opinion of the court:

Plaintiffs, Lisa Maxton *et al.*, appeal from the trial court's order of February 13, 1992, granting defendant Allstate's motion for

summary judgment. Plaintiffs claim that the trial court erred in granting Allstate's motion for summary judgment because questions of material fact remain.

The facts of this case are as follows: On September 4, 1987, Jamie Garegnani purchased automobile insurance from Allstate on a 1980 Datsun 200SX vehicle which she and her husband, Chuck Garegnani, jointly owned. Jamie purchased the insurance from Wayne Schwartz, an Allstate sales representative, by paying him with a check in the amount of $52.25. An application for automobile insurance was filled out by Mr. Schwartz on behalf of the Garegnanis, and Jamie signed the application. Jamie was given a copy of the document. The application constituted a binder of insurance (see *Jacobs v. Atlas Insurance Co.* (1909), 148 Ill. App. 325, 326) or insurance contract which became effective September 4, 1987, at 2:15 p.m. No expiration date appears on the face of the binder.

On January 28, 1988, Chuck was driving the 1980 Datsun when it collided with a vehicle driven by Lisa Maxton. A suit was filed on March 17, 1988, by the occupants of Lisa Maxton's vehicle against Chuck Garegnani.

In March 1988, approximately two weeks after summons was served on Chuck, Jamie called Schwartz to inform him about the accident. Schwartz told her that their insurance had been cancelled before the accident occurred. Although the suit against Chuck is still pending, it is not the subject of this appeal.

On September 18, 1990, a first amended complaint was filed. Count VII of the amended complaint seeks a declaratory judgment against Allstate on the issue of coverage. On March 27, 1990, Allstate filed a counterclaim for declaratory judgment which is also at issue before this court.

The Garegnanis claim that the binder of insurance is the only document that they received from Allstate. At the time that the Garegnanis applied for automobile insurance, Schwartz apparently told Jamie that she would receive a policy and a renewal notice in the mail when another premium was due. Because the Garegnanis never received anything else in the mail, they believed that they had insurance coverage on their vehicle at the time of the collision with Lisa Maxton's vehicle.

Allstate claims that on September 24, 1987, it mailed a notice of cancellation of the binder of insurance to the Garegnanis. The mailing of the cancellation notice was generated by a machine; therefore, no witness could testify that the letter was actually

mailed to the Garegnanis. According to Allstate, the notice of cancellation stated that the reason that the Garegnanis' insurance was cancelled was due to the fact that it had discovered two traffic violations on Jamie's motor vehicle record. Allstate's letter to the Garegnanis stated that their insurance would terminate on October 30, 1987, and was signed by "R. Keller," which is an alias used by Allstate for this region of the country. Allstate claims that it mailed the cancellation notice to the address that the Garegnanis provided in the application for insurance.

The record indicates that the notice that allegedly was mailed to the Garegnanis was mailed to them at "Route 1, Box 5, Blue Bld Es, Herrin, IL 62948," instead of "Route 1, Box 5, Blue Blaze Estates, Herrin, IL 62948," as the Garegnanis had provided in the application for insurance. The Garegnanis testified that when they applied for the automobile insurance, they had a new address and were told by the manager of the complex in which they lived that Rural Route No. 1 was the correct route number. A few months after the Garegnanis moved to Blue Blaze Estates, they realized that they were not receiving all of their mail and inquired into the problem at the local post office. The post office informed them that the correct route number was Rural Route No. 2. The Garegnanis apparently never informed Allstate of the change in their address.

Allstate claims that the contract of insurance entered into between Allstate and the Garegnanis on September 4, 1987, was cancelled on October 30, 1987, at 12:01 a.m. as provided in the letter dated September 24, 1987. Further, Allstate contends that even if the insurance had not been cancelled, the Garegnanis failed to notify Allstate of the accident "at once," as provided in the policy of insurance, and hence, they provided late notice of the accident to Allstate which is allegedly in contravention of the provisions in the Garegnanis' automobile policy.

On July 29, 1991, Allstate filed a motion for summary judgment on count VII of plaintiffs' first amended complaint and on both counts of Allstate's counterclaim for declaratory judgment. Both the plaintiffs' and Allstate's causes of action sought a determination as to whether Chuck Garegnani was insured by Allstate when his vehicle collided with Lisa Maxton's vehicle. On February 13, 1992, the trial court granted Allstate's motion for summary judgment against the plaintiffs. The trial court determined that Allstate had effectively cancelled the Garegnanis' insurance, and even if the insurance had not been cancelled, the Garegnanis were not entitled to recover from Allstate because they had given late notice of the au-

tomobile accident to Allstate. Plaintiffs filed a timely notice of appeal from the trial court's order on February 18, 1992. Because questions of material fact remain, we believe that the trial court erred in granting Allstate's motion for summary judgment; therefore, we reverse and remand to the trial court.

Summary judgment is a drastic remedy and should only be allowed when the right of the moving party is clear and free from doubt. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215.) This is so even though the use of the summary judgment procedure is encouraged as an aid in the expeditious disposition of a law suit. (*Loyola*, 146 Ill. 2d at 271, 586 N.E.2d at 1215.) Under section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1992)), the sole function of the court reviewing the trial court's entry of summary judgment is to determine whether the lower court correctly ruled that no genuine issue of fact had been raised and, if none was raised, whether judgment was correctly entered as a matter of law. (*Hudlin v. City of East St. Louis* (1992), 227 Ill. App. 3d 817, 825, 591 N.E.2d 541, 547.) The reviewing court must determine whether the trial court abused its discretion in concluding that no genuine issue of material fact remains. *Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.* (1992), 229 Ill. App. 3d 413, 416, 593 N.E.2d 1087, 1089.

When determining whether the moving party is entitled to summary judgment, the trial court is required to construe the pleadings, affidavits, depositions, and admissions strictly against the moving party and liberally in favor of the opponent. (*Loyola*, 146 Ill. 2d at 271, 586 N.E.2d at 1215; *Hudlin*, 227 Ill. App. 3d at 825, 591 N.E.2d at 550.) Hence, a summary judgment motion should be decided solely on the basis of the record as it exists at the time the motion is heard. (*Loyola*, 146 Ill. 2d at 272, 586 N.E.2d at 1215.) The trial court must strictly construe all evidence and draw reasonable inferences from the record in favor of the nonmoving party. (*Aetna*, 229 Ill. App. 3d at 416, 593 N.E.2d at 1089.) The court can draw inferences from the undisputed facts; however, if reasonable persons could draw different inferences from the undisputed facts, the motion should be denied and decided by the trier of fact. (*Loyola*, 146 Ill. 2d at 272, 586 N.E.2d at 1215.) In light of this standard, the trial court has no discretion in deciding the matter. (*Loyola*, 146 Ill. 2d at 272, 586 N.E.2d at 1215.) The issue becomes one of law only when the undisputed facts admit a single inference. (*Quality Lighting, Inc. v. Benjamin* (1992), 227 Ill. App. 3d 880,

884, 592 N.E.2d 377, 380.) Hence, if the reviewing court determines that a genuine issue of material fact remains, it will reverse the trial court's granting of summary judgment. *Quality*, 227 Ill. App. 3d at 884, 592 N.E.2d at 380.

In support of the motion for summary judgment, Allstate presented (1) the letter dated September 24, 1987, from Allstate to the Garegnanis purporting to cancel their insurance; (2) a copy of the proof of registered service list that Allstate retains to show that a notice of cancellation was mailed; (3) an affidavit of Wayne Cone, Allstate staff specialist, which stated that the proof of registered service list is Allstate's regularly established procedure for mailing cancellation notices; and (4) an affidavit from Wayne Stanley Schwartz, a senior account agent for Allstate, stating that he had received a copy of the letter of cancellation that Allstate had allegedly mailed to the Garegnanis.

On September 4, 1991, the plaintiffs filed an objection to Allstate's motion for summary judgment. In support of its objection, plaintiffs filed the discovery depositions of Wayne Cone, an Allstate staff specialist, and Dwight Bodine, an Allstate market support manager, the supplemental discovery depositions of Jamie and Chuck Garegnani, and excerpts from the discovery depositions of Jamie Garegnani and Wayne Stanley Schwartz.

Schwartz indicated in his deposition that (1) he was an Allstate sales representative; (2) he sold automobile insurance to the Garegnanis on September 4, 1987, for a 1980 Datsun 200SX; (3) at that time, the Garegnanis' 1980 Datsun was covered by Allstate; (4) Allstate cancelled the Garegnanis' automobile policy effective October 30, 1987; (5) no evidence exists indicating that the Garegnanis actually received the letter of cancellation; and (6) the notice of cancellation was not sent by certified mail.

Jamie Garegnani testified in her deposition that (1) she applied for automobile insurance with Allstate's agent Schwartz in September of 1987; (2) Schwartz told her that she would have a certain length of time to renew her policy and that she would receive a renewal notice in the mail; (3) she never received the renewal notice; (4) she never received a copy of her policy; (5) she called Schwartz to report the accident and he informed her that she did not have any automobile insurance; (6) she never received a letter cancelling her insurance; (7) she requested that Schwartz send her a copy of their automobile liability policy and he did not respond; (8) at the time she purchased insurance from Allstate she lived at Blue Blaze Estates in Herrin, Illinois; (9) the office manager at Blue Blaze told

them that their address was Rural Route No. 1; (10) the local post office informed her that the proper address was, in fact, Rural Route No. 2; and (11) sometimes she would receive her mail and other times the post office would send it back. Chuck Garegnani's supplemental deposition basically reiterated most of the information contained within Jamie's deposition.

Dwight Bodine's testimony in his deposition outlined Allstate's process of printing cancellation letters. He stated that Allstate prints approximately 200 letters per day and that a mail room employee picks the letters up, reconciles the list for postage purposes, and delivers them to the post office. In this case, Mr. Bodine said that it looked like the process went as it was supposed to.

Wayne Cone handles complaints between the insured and Allstate. He stated in his deposition that the Garegnanis' application for insurance originally came to his office, and the information from the application was entered into the computer. The underwriters then consider whether the policy is going to be issued or if they need additional information. If all of the information is available, the underwriter makes a decision at that time with respect to whether the application will be accepted or rejected. The agent makes a request for the driving record of the applicant from the Secretary of State to determine if the application will be accepted or rejected. If the agent does not request this information, the underwriting department does. Mr. Cone believed, by looking at the post office registry, that the Garegnanis' cancellation notice was mailed on September 23, 1987.

In support of their position, plaintiffs claim that the contract of insurance between Allstate and the Garegnanis could not be unilaterally and arbitrarily cancelled because the binder did not contain a cancellation provision and the Garegnanis never received an automobile liability policy. Thus, plaintiffs contend that the cancellation provisions of the automobile liability policy do not control the terms of the contract of insurance between Allstate and the Garegnanis. Allstate claims, however, that the binder of automobile insurance expressly incorporates the cancellation and notice provisions of the applied-for automobile policy. Further, Allstate contends that if the binder did not expressly incorporate these provisions, they are impliedly incorporated under the law. Thus, Allstate claims that the automobile policy contains cancellation provisions which allowed it to cancel the binder of insurance.

■ A binder is a written instrument providing temporary insurance "from the time application to an insurance agent for insurance

is made until a policy is issued or the risk is passed upon and declined by the company whose representative has issued the 'binder.' " (*Jacobs*, 148 Ill. App. at 328.) When an insurance binder does not specify the terms and the provisions of the policy applied for, it, as a matter of law, incorporates all of the terms and provisions of the policy for which application through the binder is made. (*Altrocchi v. Hammond* (1958), 17 Ill. App. 2d 192, 200, 149 N.E.2d 646, 651.) Based upon the above premise, Allstate insists that it complied with the cancellation provisions contained within the applied-for automobile policy when it cancelled the Garegnanis' binder of insurance. We note, however, that when a defendant pleads the cancellation of a policy, it has the burden of proving it. *McNeil v. Allstate Insurance Co.* (1966), 69 Ill. App. 2d 270, 275, 216 N.E.2d 3, 6.

■ The binder in the case at bar reads as follows: "In reliance on the statements in this application and *subject to the terms and conditions of the policy* authorized for the company's Insurance to the applicant, the company named above binds the Insurance applied for to become effective 2:15 p.m. 9/4/87." (Emphasis added.) The record in the case at bar does not include the Garegnanis' automobile policy; therefore, we cannot determine if Allstate did, in fact, comply with the cancellation provisions contained within the Garegnanis' automobile liability policy. Furthermore, whether the insurer gave the notice of cancellation required is a question of fact. (*McNeil*, 69 Ill. App. 2d at 275, 216 N.E.2d at 6.) Hence, we believe the trial court in the instant case erred in granting Allstate's motion for summary judgment because Allstate has not met its burden of proving cancellation of the Garegnanis' automobile policy.

Allstate further claims that the Garegnanis were charged with knowledge of the cancellation provisions contained within the automobile policy even if they did not receive a copy of the policy. Regardless of whether the insured received the policy, an insured is typically charged with notice of the contents of the insurance policy. (*Schoonover v. American Family Insurance Co.* (1991), 214 Ill. App. 3d 33, 43, 572 N.E.2d 1258, 1264; *Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 682, 458 N.E.2d 611, 616.) This is especially true if the policy was available and the insured was not prevented from reading it. (See *Schoonover*, 214 Ill. App. 3d at 43, 572 N.E.2d at 1264; *Dobosz*, 120 Ill. App. 3d at 682, 458 N.E.2d at 616.) In *Dobosz* (120 Ill. App. 3d at 682, 458 N.E.2d at 616), the court determined that even though the insured had not

received a copy of his policy, the transmittal sheet that was sent by the insurance company which indicated that the policy was enclosed was sufficient to put Dobosz on notice that he should have received the policy. Hence, the court hinted that Dobosz was charged with notice of the contents of the insurance policy because it was *available* and Dobosz was *not prevented from reading it.* In *Schoonover,* the plaintiff received a letter from the insurance company approximately two months after a fire loss in which defendants specifically referred to sections of the policy and noted the requirement that proof of loss must be submitted within 60 days of the loss. The *Schoonover* court determined that this letter put the plaintiff on notice that a policy had been issued and that he should have received a copy of the policy.

The aforementioned cases are distinguishable from the case at bar. Jamie Garegnani stated that she had requested a copy of her automobile policy approximately 1½ months earlier and had never received it. Thus, if this claim is true, the policy was *not* available and could not be read.

Additionally, because the policy is not part of the record, it is impossible to evaluate the issue of late notice.

Furthermore, we are aware that other jurisdictions have held that the notice of rejection, "with its implicit termination of the binder, is effective only when received by the insured." (See *Statewide Insurance Corp. v. Dewar* (1984), 143 Ariz. 553, 559, 694 P.2d 1167, 1173 (and cases cited therein).) This is so because any other determination would leave the insured unaware that his application had been rejected and that he was driving while uninsured. See *Statewide,* 143 Ariz. at 559, 694 P.2d at 1173.

Allstate cites several cases for the proposition that an insured's lack of receipt of a notice of cancellation has no effect and does not preclude the cancellation of the policy. (See *Tunprasert v. Prince* (1975), 33 Ill. App. 3d 710, 711, 342 N.E.2d 244, 245; *Harms v. Travelers Indemnity Co.* (1963), 39 Ill. App. 2d 248, 254, 188 N.E.2d 356, 359; *County of Williamson v. Standard Accident Insurance Co.* (1961), 32 Ill. App. 2d 363, 366-67, 178 N.E.2d 149, 150-51; *Boyle v. Inter Insurance Exchange of the Chicago Motor Club* (1948), 335 Ill. App. 386, 389, 82 N.E.2d 179, 180.) The *Tunprasert* and *Harms* cases are distinguishable from the case at bar. In *Tunprasert,* even though the insured claimed that he did not receive the notice of cancellation, the court impliedly determined that the insured did receive a notice of cancellation. (*Tunprasert,* 33 Ill. App. 3d at 712, 342 N.E.2d at 245.) The *Harms* case is distinguish-

able from the instant case because, in *Harms*, the insured admitted that he received notice after the date of cancellation. (*Harms*, 39 Ill. App. 2d at 253, 188 N.E.2d at 359.) Here, the insured claims that he never received the notice of cancellation.

We believe that a more correct statement of the law is that it is immaterial whether the notice of cancellation was received by the insured *if it appears that the insurer complied with the cancellation provisions of its policy.* See *Scapes v. Orr* (1954), 2 Ill. App. 2d 363, 366, 119 N.E.2d 479, 480; *Roon v. Van Schouwen* (1950), 406 Ill. 617, 622, 94 N.E.2d 880, 882; *Boyle*, 335 Ill. App. at 389, 82 N.E.2d at 180; *County of Williamson*, 32 Ill. App. 2d at 365, 178 N.E.2d at 150.

In its brief, Allstate has quoted information that is allegedly contained within the Geragnanis' policy. We have searched the record in vain and have found no such policy. Because the policy is not contained within the record, we cannot consider that part of Allstate's brief which contains the excerpt of the cancellation provision and any part of Allstate's brief which refers to the cancellation provision. Allegations that are contained within a brief but are entirely outside the record cannot be considered on appeal. *Smith v. Peters* (1947), 398 Ill. 108, 112, 75 N.E.2d 341, 343; *Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 558, 474 N.E.2d 744, 748.

For all of the foregoing reasons, we can hardly say that the evidence in the instant case is undisputed. We believe that when the evidence is construed strictly against Allstate and liberally in favor of the plaintiffs material questions of fact remain.

In light of the foregoing analysis, we reverse the trial court's grant of Allstate's motion for summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

WELCH and GOLDENHERSH, JJ., concur.