**DAIRYLAND INSURANCE COMPANY,**
**a Wisconsin corporation, Plaintiff,**

v.

**Robert D. KANKELBERG et al.,**
**Defendants.**

**Civ. No. 72-1023.**

United States District Court,
D. Oregon.

Dec. 17, 1973.

---

Asa L. Lewelling, Salem, Or., for plaintiff.

Paul J. Kelly, Jr., Legal Aid Society, Portland, Or., for defendants Kankelberg.

Peter A. Schwabe, Jr., Portland, Or., for defendants Blystone.

## OPINION

BURNS, District Judge:

This is a declaratory judgment action to determine insurance coverage. Trial was to the Court. Plaintiff insurance company is a Wisconsin corporation with its principal place of business in Oregon. Defendants are citizens of Washington. Jurisdiction is predicated on 28 U.S.C. § 1332.

On March 14, 1972, Defendant Robert Kankelberg, accompanied by Defendant Raymond Blystone, went to the office of Joseph L. Smokey, dba Vancouver Insurance Agency in Vancouver, Washington. Kankelberg executed a written application to Plaintiff for liability coverage on his 1969 Chevrolet automobile.[1] Mr. Kankelberg gave Mr. Smokey a $38.00 check in payment of the first two months' premium. Smokey "bound" coverage as of 12:01 A.M. March 15, 1972.

Kankelberg obtained the insurance in contemplation of an impending automobile trip to Reno, Nevada, with the Blystones. While returning from this trip on March 18, 1972, the above automobile, operated by Defendant Patricia Kankelberg (Robert's wife), was involved in a single car accident in Linn County, Oregon. Defendants Raymond and Bonnie Blystone each sustained injury as a result of the accident, and have brought suit against the Kankelbergs in state court to recover for personal injuries.

On about March 20, 1972, Mr. Kankelberg went to the office of Mr. Smokey to notify him of the accident and check his coverage. Defendants claim that at this meeting, Smokey deliberately or recklessly falsely represented to Kankelberg that he had no insurance for personal injuries or other damages arising out of the March 18th accident. Defendants further contend that as a result of these representations, Kankelberg stopped payment on the $38.00 check which he had given Smokey when he made the original application.

The evidence shows that at the March 20th meeting no specific discussion took place vis-a-vis "coverage" for Kankelberg as to any claims by the Blystones, although I find that Kankelberg mentioned the existence of the Blystones' injuries in his discussion with Smokey. I also find that Smokey correctly represented to Kankelberg that while he had "liability coverage," there would be no medical payments coverage for him or his wife. Apparently, the lack of medical coverage led Kankelberg to believe that the insurance was of no benefit to him, and, therefore, he stopped payment on the check.

When the check was returned unpaid to Plaintiff by Kankelberg's bank (because of the stop payment order), Plaintiff, relying on the "nonpayment" provision in the application, *infra*, notified Kankelberg on March 28, 1972, that ". . . no insurance coverage has been afforded to you" for the March 18th accident. Plaintiff continues to rely on this provision in seeking a de-

[1] The application shows it was for liability and uninsured motorist coverage only. Medical payments or other types of coverage was not included.

claratory judgment that no coverage of any kind exists for this accident.

Defendants counterclaim for a declaratory judgment to the contrary. They rely on an estoppel theory, i. e., Smokey's alleged false representations induced Kankelberg to stop payment on his check, and upon two Washington Statutes, *infra*. Based on my findings of fact, *supra*, I reject the estoppel defense. Thus, the remaining problem to be solved involves an analysis of the Washington statutes, and their interplay, if any, with the nonpayment provisions of the insurance application. Hence each is set forth:

RCW 48.18.291(1) provides:

"No contract of insurance predicated upon the use of a private passenger automobile shall be terminated by cancellation by the insurer until at least twenty days after mailing written notice of cancellation to the named insured at the latest address filed with the insurer by or on behalf of the named insured *Provided,* That where cancellation is for nonpayment of premium, at least ten days notice of cancellation, accompanied by the reason therefor, shall be given."

RCW 48.18.320 provides:

"No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void."

The "nonpayment" provision in the insurance application provides:

"I also fully understand and agree that if any premium remittance by me, or on my behalf, is not honored by the Payor (Bank), it will be deemed non-payment of premium, and no coverage will have been bound, or afforded under this application and subsequent binder or policy."

Plaintiff initially contends that the application provision, *supra*, means no insurance ever existed to be cancelled or retroactively annulled. However, the application also states that the policy period begins as of 12:01 A.M. March 15, 1972, and that *coverage was bound* as of the same time and date. Both of these times and dates are typewritten, while the application provision is printed. Accepting an interpretation most favorable to the insured, Ames v. Baker, 68 Wash.2d 713, 415 P.2d 74, 77 (1966), and resolving conflicts between printed and typewritten provisions in favor of the latter, Franklin v. Northern Life Insurance Co., 4 Wash.2d 541, 104 P.2d 310, 318 (1940), I reject Plaintiff's contention. *Cf.* Carolina Casualty Insurance Co. v. Schlief, 258 F.Supp. 405 (S.D. Iowa 1966).

■ Unfortunately, the applicability of the statutes relied on by Defendants must be decided without the benefit of controlling state court precedent. Defendants contend that RCW 48.18.-291(1), *supra*, required Plaintiff to give Mr. Kankelberg ten days notice before cancelling his insurance, and, therefore, Plaintiff was bound to extend coverage until April 7, 1972. The purpose of "notice" statutes is to provide the insured the opportunity to obtain other insurance prior to cancellation. American Fidelity & Casualty Co. v. Knox, 164 F. Supp. 3, 6 (W.D.La.1958). Since Kankelberg stopped payment on his check, believing his insurance was of no benefit to him, notice of cancellation would not be necessary to serve the intended purpose of the statute. Therefore, the statute is not applicable. Whether Kankelberg's actions have the effect of nullifying coverage as to the time before the check was dishonored becomes the dispositive issue in this case.

■ Defendants also contend that the "nonpayment" provision in the insurance policy cannot be applied to this case be-

cause it constitutes an agreement to retroactively annul coverage after the occurrence of injuries for which the insured may be liable. Defendants urge that such agreements are prohibited by RCW 48.18.320, *supra*. Plaintiff disputes the applicability of this statute on the ground that the application was completed before the accident and, therefore, could not possibly constitute an "agreement . . . after the occurrence. . . . ." Defendants, in response, claim that the phrase "after the occurrence" modifies the verb "annulled" rather than the noun "agreement," and, therefore, the actual time of the "agreement" is not relevant as long as its effect is to retroactively annul coverage. Assuming, *arguendo*, that Plaintiff's construction of the statute is correct, Defendants prevail nevertheless for the following reasons:

In this case, Plaintiff acquiesced in the de facto cancellation of the insurance by Kankelberg rather than waiving the application provision, *supra*, and suing for all or part of the $38.00. Plaintiff's counsel stated in oral argument that the company could waive the application provision if it wished to do so. The actions of both Kankelberg and the insurance company took place after the potential liability was incurred. I conclude that the combined actions of the insured and insurer constituted an "agreement" to retroactively annul insurance coverage, in violation of RCW 48.18.320. The Court is aware that this conclusion involves a broad interpretation of the word "agreement" contained in the statute. Nevertheless, this interpretation is consonant with the purposes of this statute, and with the statutorily compelled recognition, under Washington law, that the insurance business is affected by the public interest.[2]

I conclude that the Kankelbergs' insurance with Plaintiff was in effect as of the date of the accident in question.

This opinion shall serve as findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a). Counsel for Defendants shall submit an appropriate judgment order consistent with the foregoing.

---

2. RCW 48.01.030: "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance."