694 P.2d 1190

**STATEWIDE INSURANCE CORPORA-TION, an insurance company,
Plaintiff-Appellee,**

v.

**Robert DEWAR and Irene Dewar, his
wife, Defendants-Appellants.**

No. 1 CA–CIV 5121.

Court of Appeals of Arizona,
Division 1, Department A.

April 21, 1983.

Rehearing Denied June 7, 1983.

Review Granted July 19, 1983.

David S. Rosenthal, P.C. by David S.
Rosenthal, Phoenix, for plaintiff-appellee.

Jennings, Strouss & Salmon by Ted A.
Schmidt, M. Byron Lewis, John A. Michea-
els, Phoenix, for defendants-appellants.

## OPINION

HAIRE, Judge.

On this appeal from summary judgment entered in favor of the appellee Statewide Insurance Corporation, the primary issue concerns the liability of the insurer where immediate coverage has been extended in consideration of the present payment by check of the entire policy premium, and then the check is dishonored upon timely presentment to the drawee bank. The trial court held that under such circumstances there was no coverage, and entered summary judgment for the insurer. The pertinent facts, uncontroverted for summary judgment purposes, are as follows.

On Friday, February 18, 1977, Loren J. Desotell went to the offices of a designated agent for Statewide and applied for a policy of automobile liability insurance. The application was for a two months policy with coverage commencing immediately for the period of February 18, 1977 to April 18, 1977. Desotell was not a prior customer or previously known to the insurance agent, and therefore credit was not extended to him. Rather, the consideration required for coverage was the present payment of the entire policy premium, $67. There was no deferred payment or promise by Desotell to pay any amount in the future. Desotell gave the insurance agent his check for $67 at the time the application was completed, and, by the terms of the application, coverage was to commence at that time.

Upon receipt by Statewide, the application was promptly processed in accordance with Statewide's regular business practices. On the following Tuesday, February 22, 1977, the check in purported payment of the premium was included in Statewide's regular bank deposit. The drawee bank, First National Bank of Arizona refused to honor the check on presentment and returned it to Statewide's collecting bank stamped "Uncollected Funds". The dishonored check was then mailed to Statewide, where it was received on Monday, February 28, 1977. On that same day, Statewide mailed a letter to Desotell rejecting his application and advising him that his check was uncollectable and had been returned by the bank, and that it would be impossible for Statewide to issue automobile liability insurance for him.

On the following day, March 1, 1977, Desotell was involved in an automobile accident with appellants. For summary judgment purposes it is admitted that Statewide's letter of February 28, 1977, although mailed before the accident, was not received by Desotell until after the accident. Based upon injuries received in their collision with Desotell, appellants thereafter made a claim against their own insurer, under the uninsured motorist's coverage provisions of their own policy, asserting that Desotell was uninsured at the time of the accident. Their insurer subsequently paid them the uninsured motorist's policy limits of $15,000, which is the same amount of coverage applied for by Desotell in his application to Statewide.

Demand was subsequently made upon Statewide to acknowledge coverage of Desotell's liability resulting from the March 1, 1977, accident. Statewide then commenced this declaratory judgment action, seeking a declaration that because no coverage existed, it had no liability to either Desotell or to appellants. As previously indicated, the trial judge concluded that there was no coverage and granted Statewide's motion for summary judgment. Appellants have appealed from that judgment.

A review of the record in the trial court indicates that the trial court's judgment in favor of Statewide was entered upon the theory that the liability coverage extended by Statewide to the insured in the application was conditioned upon the insured's check being paid upon presentment to the drawee bank, and that when the check was dishonored, Statewide was relieved of any liability purportedly extended as the result of the completed application (binder).

■ This conclusion that payment by check represents a conditional payment and that when the check is dishonored there is a failure of consideration, relieving the oth-

er party from liability, does not constitute a novel legal theory as applied to contractual relationships generally, or as applied to insurance contracts specifically. The concept is statutorily recognized in the law of sales. *See* A.R.S. § 44–2359(C). Likewise, in considering the liability of insurance carriers, it is generally recognized that where advance payment of the premium is *required* and is made by check, if the check is dishonored, the insurer is relieved of liability for any purported coverage that otherwise would have been in effect.

Thus, in 14 J. Appleman, Insurance Law and Practice § 8144 (1944), the principle is stated as follows:

"The mere giving or sending of a worthless check to the insurer does not effect the payment of a premium; the result being, if such check is given for the first premium, that coverage never goes into effect...."

Again, in Blashfield, Automobile Law and Practice, § 302.49 (3d ed. 1966), the following summarization is set forth:

"Payment of a premium by check ordinarily is, in the absence of a statute or agreement to the contrary, conditioned on it being honored on timely presentation for payment, and the insurance company is relieved of liability on the policy when the check turns out to be worthless." (Footnotes omitted).

■ A generally recognized exception to the above-stated legal principle is that the facts in a particular case might show that a check has been taken in absolute satisfaction of the premium claim, so that if the check is dishonored the insurer is not entitled to declare the policy forfeited for nonpayment, but is relegated to its action on the check. The cases hold that the insured has the burden of proving this exception. Here, no evidence was submitted which would satisfy that burden. A case in point is *Hare v. Connecticut Mut. Life Ins. Co.,*

114 W.Va. 679, 173 S.E. 772 (1934). The court's syllabus in that case is as follows:

"In the absence of a special agreement to the contrary, the acceptance of a check in payment is conditional upon the integrity of the check."

As stated in the court's opinion:

"The premium is the price of the insurance and payment of the premium is of the essence of the insurance contract. No payment—no insurance."

173 S.E. at 773.

The *Hare* decision emphasizes that under the facts of that case the agent extended no credit to the insured and dealt solely on the supposition that the present payment by check was good. This entire question is extensively treated in an annotation in 50 A.L.R.2d 630, entitled "Receipt of Check for Insurance Premium as Preventing Forfeiture for Nonpayment."

The dissent in this case apparently does not dispute the validity of the foregoing authorities. Rather, the dissent recognizes that if there was a failure of consideration, Statewide's obligation to provide temporary coverage was discharged, without any necessity of a showing that Desotell received notice prior to the accident. Such a concession is tantamount to recognizing that the trial court correctly granted summary judgment for the insurer in this case and that the judgment should be affirmed.

■ In order to avoid such an affirmance, however, the dissent sidesteps the actual contractual facts presented by the record in this case and creates a "promise" as consideration to support a rather ingenuous legal theory relating to some imagined "special" law pertaining to insurance binder contracts. There is no such "special" law.[1] In their opening brief in this appeal, the appellants recognize that the validity of an insurance "binder" is dependent upon the same basic legal elements as any other contract. *See Employers' Liability Assurance Corp. v. Frost*, 48 Ariz.

---

1. A possible exception exists in California, involving the creation by court decision of binder coverage in claims involving life insurance policies. *See, e.g., Smith v. Westland Life Insurance*

*Co.,* 15 Cal.3d 111, 539 P.2d 433, 123 Cal.Rptr. 649 (1975) (criticized by this court in *John Hancock Mutual Life Insurance Co. v. McNeill,* 27 Ariz.App. 502, 556 P.2d 803 (1976)).

402, 62 P.2d 320 (1936); *Roscoe v. Bankers Life Insurance Co.,* 22 Ariz.App. 282, 526 P.2d 1080 (1974); *Saggau v. State Farm Mutual Insurance Co.,* 16 Ariz.App. 361, 493 P.2d 528 (1972). As stated by the Arizona Supreme Court in *Turner v. Worth Insurance Co.,* 106 Ariz. 132, 133, 472 P.2d 1, 2 (1970):

> "By whatever name it may be known, a 'binder' for temporary insurance is a contract."

Our courts have not hesitated to apply ordinary contract principles in determining whether liability exists under purported binder coverage. *See Rutherford v. John O'Lexey's Boat & Yacht Insurance, Ltd.,* 118 Ariz. 380, 576 P.2d 1380 (App.1978).

■ Here, the dissent makes a basic legal error in an attempt to avoid the "failure of consideration" consequences of the bank's dishonor of Desotell's check. Thus, the dissent states that "Statewide agreed to provide temporary, or binder, coverage, the consideration for which was Desotell's *promise* to pay $67.00, i.e., his promise to buy the policy from Statewide." Having asserted, without reference to the parties' agreement, that the consideration for the issuance of binder coverage was Desotell's *promise* to pay, the dissent then cites various authorities to the effect that actual payment of the premium is not required, that "payment of the premium is not a prerequisite to a valid automobile insurance binder," and "agreement to pay the premium, express or implied, is sufficient consideration." For the foregoing proposition the dissent cites *Rutherford v. John O'Lexey's Boat & Yacht Insurance, Ltd., supra;* 12A J. Appleman, Insurance Law and Practice § 7228, at 154–55 (1981); and an A.L.R. Annotation, 12 A.L.R.3d 1304, at 1318. The majority has no quarrel with these legal authorities cited by the dissent, nor with the application of the stated principle to the facts of the *Rutherford* decision or to any of the cases cited in the referenced portion of the Appleman citation and in the referenced A.L.R. annotation. Clearly, in cases involving binder contracts, as in any other contractual set-

ting, if a party *has bargained for* the other party's *promise* to pay, then that promise constitutes sufficient consideration to support the binder contract. All of these authorities merely stand for the proposition that if the insurer, as a part of the binder agreement, has not required present payment of the premium, then the actual or implied promise by the insured to pay in the future constitutes sufficient consideration to support the extension of binder coverage, and actual payment is not required. In all of the authorities cited in the dissent (including all cases cited in support of Appleman and the referenced A.L.R. Annotation), the facts show an actual or implied extension of credit by the insurer's agent to the insured. No case is cited in which liability was imposed where, as in this case, the insurer required the actual present payment of the premium as consideration for the extension of binder coverage rather than relying on a promise to pay at some future time. As we have indicated previously in this opinion, under such circumstances the authorities hold that if the required present payment fails because the insured's check for the initially required advance payment of premium is dishonored, then the insurer has no liability under the purported binder coverage.

The dissent, however, somehow finds that the consideration for Statewide's agreement to provide temporary, or binder, coverage was Desotell's *promise* which was bargained for in exchange for the other party's promise or performance. *See* Restatement (Second) of Contracts § 71 (1981). Here, the parties' agreement clearly shows that the consideration bargained for by Statewide in exchange for all of its obligations pursuant to the application, including the immediate extension of binder coverage, was the required present payment by Desotell of the entire premium for two months coverage. Statewide bargained for that immediate performance, not for some imagined promise by Desotell to pay in the future. Unlike the cases relied upon in the dissent, there is no showing that Statewide was willing either to provide immediate coverage based upon a mere

promise by Desotell to pay or to extend any credit at all to him. In fact, the parties' agreement negates any such showing.

The dissent additionally attempts to find support for its analysis in the fact that after the check had been dishonored, Desotell became secondarily liable and subject to suit thereon in accordance with the obligations imposed upon the drawer of a check pursuant to A.R.S. § 44–2550(B). This obligation on Desotell's part was not separate consideration exacted by Statewide for binder coverage, but rather was merely a legal incident flowing from the consideration bargained for by Statewide— the present payment by check of the entire premium by Desotell. In setting forth this alleged secondary promise to pay (by applying negotiable instruments law) the dissent appears to be urging that the parties' agreement went along these lines: "And by the way, I'll [Desotell] promise to pay my check after it bounces, if in exchange for that promise, you'll agree to give me immediate binder coverage."

It is clear that the parties here did not make any such bargain. The insurer here was not accepting as consideration for the extension of immediate coverage the secondary legal obligation which the insured had under negotiable instruments law to pay this $67 check in the event that it was dishonored by the bank. Even if the dissent's analysis could conceivably be applicable, there was no showing here that the parties intended any apportionment or "splitting" of the consideration so as to make a specific portion thereof allocable to the insurer's extension of immediate coverage. The dissent cites *Smith v. Westland Life Insurance Co.*, 15 Cal.3d 111, 539 P.2d 433, 123 Cal.Rptr. 649 (1975) stating that had Statewide desired a contrary result, it could have inserted a specific provision to the effect that upon the dishonor of any check, draft or money order, the binder contract would be void. Although the contract quoted in the *Smith* opinion did contain such specific provision, the provision was neither pertinent nor material to any issue raised in that case, nor was it even discussed in the court's opinion. To re-

quire an insurer or any other contracting party to set forth in a contract all governing general principles of law which regularly come into play upon the other party's breach of that contract is not a realistic assessment of the practicalities involved in commercial transactions.

In summary, the basis for reversal relied upon by the dissent has no legal or factual foundation in the record presented in the trial court. Additionally, the legal analysis cannot withstand careful scrutiny, and no authority cited provides any support for the result reached by the dissent.

As a final word on the "equities" which might be perceived in Desotell's favor here, we note that there is conspicuously absent from the record any affidavit by Desotell that he did not know at the time he drew the check that because of uncollected funds it would be dishonored when presented for payment. Likewise, Desotell has presented no affidavit to the effect that the check would have been subsequently honored if it had again been presented for payment. Although an affidavit of a bank officer has been filed relating to general practices concerning checks dishonored for uncollected funds, there is likewise an absence of any affidavit from the drawee First National Bank as to whether the out-of-state funds supposedly on deposit in Desotell's account were ever actually collected, and specifically whether the status of the account, considering other checks presented at the time, was such as to support a conclusion that Desotell's check would have been honored if it had been again presented for payment. Simply stated, Desotell gave a bad check in payment of a premium. The check was dishonored upon presentment.

As previously stated by this court in *Rutherford v. John O'Lexey's Boat & Yacht Insurance, Ltd., supra:*

"There are sound economic reasons for an insurance company to require more than *a mere promise* to apply for permanent insurance in return for assuming a risk of temporary coverage. Absent overriding public policy considerations,

the parties are free to contract for such conditions."

118 Ariz. at 382, 576 P.2d at 1382 (emphasis added).

Here, the insurer was not willing to accept Desotell's *promise* to pay as consideration for extending temporary coverage, but rather required the present payment of the entire policy premium. That consideration failed when the check was dishonored. The trial court correctly granted summary judgment for the insurer. That judgment is affirmed.

OGG, J., concurs.

CONTRERAS, Chief Judge, dissenting:

I dissent. The facts are not disputed, and the parties agree that the issue presented in this appeal is whether Loren Desotell (Desotell), on the date of an automobile collision with Dewars, was insured by Statewide, and whether the trial court erred in granting summary judgment in favor of Statewide in its declaratory action, holding that, as a matter of law, Desotell was not insured. I believe, as a matter of law, that Desotell was insured, and that summary judgment in favor of Statewide was error. I would therefore reverse and remand with instructions to enter summary judgment in favor of appellants Dewar.

The issues presented for review by the parties revolve around two related but distinguishable propositions: first, whether the binder of insurance coverage failed due to an asserted failure of consideration; and second, whether the binder of insurance coverage (issued as part of an application for insurance) terminated upon the company's rejection of the application.

I believe that any dispute as to whether the one-page document in question is an "application" or a "binder" is insubstantial. It is clear to me that the document, on its face, as completed by Desotell and Reuben B. Frank, an insurance agent for Statewide (referred to by the majority as a designated agent for Statewide) is both an application and a binder. The document as a whole is an application for a two-month policy of automobile liability insurance. However, the lower left-hand portion of the document is clearly a binder. It is specifically identified as such and, as indicated in writing, coverage was bound as of 1:30 p.m. on February 18. *See Turner v. Worth Ins. Co.*, 106 Ariz. 132, 472 P.2d 1 (1970).

## CONSIDERATION

Statewide challenges the continued effectiveness of the binder on the ground that there was a failure of consideration, or that binder coverage was "conditional" upon payment of the premium. Statewide concludes that the binder coverage ceased at the moment that Desotell's check was dishonored, or at least at the time Statewide learned that it had been dishonored.[2] The majority accepts this argument but I cannot.

Since the one-page document involved in this controversy is, in my opinion, both an application for insurance and a binder for temporary insurance coverage, it is necessary to consider and discuss its two components.[3] First, Desotell offered to purchase a two-month automobile liability insurance policy on the terms stated. Had Statewide accepted the application and issued a policy, the consideration for the coverage would have been Desotell's *payment* of $67.[4] Statewide's acceptance of the check

2. Statewide's "rejection" argument is not really critical here. If there was a complete failure of consideration, Statewide's obligation to provide temporary coverage was discharged, without necessity of any notice to Desotell. I do not believe that there was such a complete failure of consideration.

3. I do not believe that this distinction is ever fully recognized in the majority opinion, which treats the document as simply an application for an insurance policy. The "binder" in the lower

left corner, which is specifically identified as such, is effectively and completely ignored by the majority.

4. Conversely, had Statewide rejected the application, e.g., as an unacceptable risk, it would have been obligated to refund the premium payment to the applicant. *See, e.g., Smith v. Westland Life Ins. Co.*, 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975). However, under such circumstances, the applicant, though he had actually "paid" nothing, would still be protected

as payment of the premium was conditional on its being honored on presentation. *See* Annot., Receipt of Check for Insurance Premium as Preventing Forfeiture for Nonpayment, 50 A.L.R.2d 630, 640–42 (1956). It is undisputed that Statewide could (and did) reject the application when payment was not made on Desotell's check, and that the two-month *policy* never went into effect. It is undisputed that Desotell never paid any premium and that Statewide incurred no obligation or liability on the policy itself. This point is made at some length in the majority opinion. I agree, but do not believe that this is the dispositive issue in this appeal.

Second, and subsidiary to the first proposed agreement, Statewide agreed to provide temporary, or binder, coverage, the consideration for which was Desotell's *promise* to pay $67, i.e., his promise to buy the policy from Statewide. Statewide could have required immediate payment in cash, but did not do so. Desotell's promise to complete the application and pay the premium for "permanent" insurance was sufficient consideration to support the contract for temporary or binder coverage. Actual payment was not required. *Rutherford v. John O'Lexey's Boat & Yacht Ins., Ltd.,* 118 Ariz. 380, 576 P.2d 1380 (Ct.App.1978); 12A Appleman, Insurance Law and Practice § 7228, at 154–55 (1981); *see* Annot., Temporary Automobile Insurance Pending Issuance of Policy, 12 A.L.R.3d 1304, 1318 (1967): "Payment of the premium is not a prerequisite to a valid automobile insurance binder. An agreement to pay the premium, express or implied, is sufficient consideration...."

The majority opinion purports to accept the general proposition that a promise to pay the premium is sufficient consideration for binder coverage, but rejects the specific proposition that Desotell's promise to pay upon dishonor was sufficient. The majority apparently concedes that had Statewide, through its designated agent Reuben B. Frank, "extended credit", i.e., given Desotell until March 2 to pay the $67, there would have been binder coverage, but then reasons that although Desotell's promise was still effective on March 2, binder coverage had already lapsed. I am not persuaded. Desotell's promise to pay—the consideration for the binder—remained in effect after his check was dishonored. Part of his promise to pay was his promise, as drawer, to pay the amount of the draft upon dishonor and notice of dishonor. A.R.S. § 44–2550(B) (U.C.C. § 3–413(2)). Since Desotell's promise to pay continued after the dishonor of his check (and could have been enforced had Statewide so chosen), and since that promise was the consideration for the binder, there was no failure of consideration. Dishonor of the check did not, in and of itself, terminate the binder coverage.[5]

## NOTICE OF REJECTION

Appellants Dewar also contend that the notice of rejection was not effective until received by Desotell. I agree. The majority does not address this second issue, finding the failure of consideration sufficient grounds to affirm. Since I conclude that there was no failure of consideration, I shall proceed to consider and discuss this second issue.

by the binder coverage until he received notice of rejection. *See* discussion below and Annot., Temporary Automobile Insurance Pending Issuance of Policy, 12 A.L.R.3d 1304 (1967).

5. Had Statewide desired a contrary result, it could have so provided, as by the following term:

That if any check, draft or money order given in payment of the premium is not paid on presentation, this receipt [binder] shall be void.

*See Smith v. Westland Life Ins. Co.,* 15 Cal.3d at 113, 123 Cal.Rptr. at 651, 539 P.2d at 435, n. 3. Statewide drafted the language of the application, including the binder, and had it intended to condition its liability under the binder as well as *that* under the policy itself, upon actual payment of $67, "it could have easily used clear and unequivocal language to indicate its intention." 15 Cal.3d at 117, 123 Cal.Rptr. at 655, 539 P.2d at 439. Statewide could have imposed a condition subsequent, *Rutherford,* but failed to do so.

1. *Applicability of ten-day notice provisions*

The parties have argued the applicability of both statutory and contractual "cancellation" provisions, but I believe that those provisions are not controlling here. A.R.S. § 20–1632 provides:

§ 20–1632. Notices to insured

A. A notice by the insurer to the policyholder of non-renewal, cancellation or reduction in the limits of liability or coverage shall be mailed to the named insured by certified mail or United States post office certificate of mailing at least ten days prior to the effective date of such non-renewal, cancellation or reduction in limits of liability or coverage.

. . . .

B. Failure of the insurer to comply with subsection A shall invalidate any cancellation, non-renewal or reduction in limits of liability or coverage, except a cancellation or non-renewal for nonpayment of premium.[6]

Since Statewide never accepted Desotell's application for a two-month policy, I believe that there was no "policy" to "cancel," and A.R.S. § 20–1632 cannot be directly applicable.[7]

Alternatively, appellants argue that A.R.S. § 20–1632 is "indirectly" applicable. In compliance with the statutory ten-day notice requirement, the policy for which Desotell applied, and which Statewide intended to issue, contained the following term:

24. Concelation. . . . This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective.

Appellants argue that the binder incorporated the ten-day notice of cancellation term contained in the policy for which Desotell applied, by virtue of the following statute:

§ 20–1120. Binders

A. Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

This court has held that the incorporated terms include, "at the least . . . the subject matter, the risk, the duration and amount of coverage, the amount of the premium, and the identity of the parties." *Saggau v. State Farm Mut. Ins. Co.*, 16 Ariz.App. 361, 363, 493 P.2d 528, 530 (1972). There is merit to Statewide's claim that incorporation of *all* terms of the policy which it originally intended to issue, including the notice of cancellation requirement, would "fly in the face of reason and logic," and I do not read *Turner* or *Saggau* to require incorporation of the cancellation term. It has been stated that the provisions of the contemplated policy do not govern the manner in which the binder may be cancelled.

---

**6.** A.R.S. § 20–1631, which, inter alia, limits the grounds for cancellation, is explicitly inapplicable to policies in effect for less than 60 days. A.R.S. 20–1632, which requires notice to the policyholder, contains no such 60-day exclusion. Consequently, A.R.S. § 20–1632 is not rendered inapplicable simply because the binder was in effect for only some 10–12 days. *Cf. Miney v. Baum*, 170 N.J.Super. 282, 406 A.2d 234 (1979), holding that where a binder had been in effect more than 60 days, cancellation must comply with statutory notice requirements.

**7.** *But see Terry v. Mongin Ins. Agency*, 105 Wis.2d 575, 314 N.W.2d 349 (1982), holding that a binder is a "policy" within the statutory defini-

tion and therefore the ten-day notice requirement is applicable.

I think it both unnecessary and unwarranted to adopt the reasoning of *Terry*. Despite the broad Arizona statutory definition of "policy,"

§ 20–1102. "Policy" defined

"Policy" means contract of or agreement for or effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof.

I conclude that the legislature intended to distinguish a "binder" from a "policy." *See* A.R.S. § 20–1120(A). A binder is separate from, and subsidiary to, a policy under the Arizona statutory scheme.

7 Blashfield, Automobile Law and Practice § 291.8, at 179 (3d ed. 1966).[8]

However, I do not believe that a resolution of the issue of the applicability, either direct or indirect, of the ten-day notice requirement, is required here. Rather, the dispositive question is: at what time was the application effectively rejected by Statewide, thereby terminating the temporary coverage provided by the binder.[9]

## 2. When notice is effective

Statewide virtually assumes that its rejection of Desotell's application was effective on February 28, 1977, when it mailed the letter to Desotell. Appellants Dewar argue that the rejection was effective only when received by Desotell—apparently on March 2 or 3, 1977—but in any event after the collision on March 1, 1977.[10]

While the question is one of first impression in this state, and while there is limited authority from other jurisdictions, the general rule is that a rejection of an application for insurance of any type is effective, and binder coverage thereby terminated, only when notice is received by the applicant. Appleman § 7227, at 145–51; 43 Am. Jur.2d Insurance § 218, at 278–79 (1969).

In the context of automobile liability insurance, the rule has been stated thus:

A binder, by its nature, effects temporary insurance until the company can investigate the applicant's insurability and issue a policy or reject the risk. Coverage is not terminated until the applicant receives notice of such rejection, and a notice sent before, but not received until after, an accident is insufficient to avoid responsibility on the part of the insurer.

. . . .

Notice of termination of coverage given to an insurance agent, but not communicated to an applicant for insurance, does not effect a cancellation of the binder. . . .

Annot., Temporary Automobile Insurance, 12 A.L.R.3d at 1327, 1328. The use of the mails was the choice of Statewide; other more immediate methods of communication were available. Based upon the foregoing authorities and although the notice was mailed before the collision, in my opinion, the notice of rejection was not effective until received by Desotell. *See also State Farm Mut. Auto. Ins. Co. v. Collins,* 75 Ga.App. 335, 43 S.E.2d 277 (1947).

Similarly, in the context of fire or similar casualty insurance, a rejection of the risk by the insurer does not terminate the temporary contract if it is not communicated to the insured. Annot., Temporary Fire, Wind, or Hail Insurance Pending Issuance of Policy, 14 A.L.R.3d 568, 603–605 (1967). The same rule has been applied to life insurance. Appleman, § 7241, at 236; *Smith v. Westland Life Ins. Co.,* 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975); *Dunford v. United of Omaha,* 95 Idaho 282, 506 P.2d 1355 (1973).[11]

**8.** *But see,* as holding that a binder incorporated the cancellation term of the policy, *State Automobile Mut. Ins. Co. v. Lloyd,* 54 Tenn.App. 587, 393 S.W.2d 17, *cert. denied* (Tenn.1965).

**9.** Statewide phrases the issue presented thus: IS A BINDER OF COVERAGE, ISSUED AS PART OF AN APPLICATION FOR INSURANCE, TERMINATED UPON THE COMPANY'S REJECTION OF THAT APPLICATION? I have no qualms about answering that question in the affirmative, *Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (Ct.App. 1979) (dicta), but I do not think it dispositive.

**10.** Since I have concluded that the temporary coverage did not terminate when Desotell's check was dishonored, Statewide's "consideration" argument is not really critical here. The effective date of a notice of rejection is, I believe, independent of the grounds for rejection. Thus, the situation would be no different had Desotell's application been rejected for some other reason, *e.g.,* an unacceptable risk.

I will assume, without deciding, that the letter to Desotell was an effective rejection, at some disputed time. For a somewhat more strict view of what is necessary to constitute an effective rejection, *see Smith v. Westland Life Ins. Co.*

**11.** In both *Smith* and *Dunford,* the validity of the binder ab initio was not disputed. In *Smith,* the California Supreme Court held that termination of a life insurance binder required (1) actual rejection of the application communicated to the insured by appropriate notice thereof, and (2) refund of the premium payment. 539 P.2d at 438–39. In *Smith,* it was assumed, in both the majority opinion and the dissent, that the

Regardless of the type of insurance, the purpose and effect of a binder is to provide the applicant with coverage from the date of his application. The applicant, having tendered his premium payment, justifiably relies on such coverage. *Smith v. Westland Life Ins. Co.* There is nothing in the record to indicate that, at the time he tendered the check to Statewide, Desotell knew or had reason to know that his check would not be paid upon presentation. Without receipt of notice that his application has been rejected, an applicant has no opportunity or incentive to seek insurance coverage elsewhere. *Dunford; Rommel v. New Brunswick Fire Ins. Co.*, 214 Minn. 251, 8 N.W.2d 28 (1943). In this case, without receipt of notice of rejection, Desotell had no opportunity or incentive to make "other arrangements" with Statewide (i.e., pay the dishonored check), to purchase a policy from another insurer, or to make an informed decision to drive without automobile liability insurance.

## CONCLUSION

Since I conclude that (1) dishonor of Desotell's check did not constitute a "failure of consideration" and (2) Statewide's rejection of the application was not communicated to Desotell prior to the collision, I further conclude that Desotell was insured under the binder and under the terms set forth on the application at the time of the collision. Therefore, I would reverse the summary judgment in favor of appellee Statewide and remand the matter to the trial court with instructions to enter summary judgment in favor of appellants Dewar.

first element (notice) was required; the second element (refund) is, of course, not at issue here.

In Arizona, "life or disability insurances" are expressly excluded from the statutory authorization for oral or written binders. A.R.S. § 20–1120; *Continental Life & Acc. Co. v. Songer.*