694 P.2d 1167

**STATEWIDE INSURANCE CORPORA-TION, an insurance company, Plaintiff-Appellee,**

v.

**Robert DEWAR and Irene Dewar, his wife, Defendants-Appellants.**

**No. 16680–PR.**

Supreme Court of Arizona,
En Banc.

May 29, 1984.

**554**

David S. Rosenthal, P.C. by David S. Rosenthal, Phoenix, for plaintiff-appellee.

Jennings, Strouss & Salmon by Ted A. Schmidt, M. Byron Lewis, John A. Michaels, Phoenix, for defendants-appellants.

FELDMAN, Justice.

Robert and Irene Dewar (Dewar) petition for review of a judgment entered in a declaratory judgment action in which Statewide Insurance Company (Statewide) sought an adjudication that Loren Desotell (Desotell) was not covered for damages which he had inflicted upon Dewar in an automobile accident. The trial court entered summary judgment against Dewar; the court of appeals affirmed by majority opinion. *Statewide Insurance Corporation v. Dewar*, 143 Ariz. 576, 694 P.2d 1190 (1983). We granted review to settle the narrow issue of whether a binder for automobile liability insurance covers the prospective insured for an accident occurring between the time coverage is bound and the application for insurance is rejected. We have jurisdiction under Ariz.Const. art. 6 § 5(3) and Ariz.R.Civ.App.P.Rule 23, 17A A.R.S. We hold that coverage did exist and reverse.

FACTS

On February 18, 1977 Desotell met with Reuben Frank, an agent of Statewide, to purchase automobile insurance. Desotell and Frank had not done business before. Desotell completed an application for insurance on a standard form prepared by Statewide. The application states in bold face type in the upper right hand corner that

[u]nless otherwise agreed, insurance will become effective at 12:01 a.m. of day

following date of postmark[.] Application will not be accepted for coverage bound unless complete in every detail and signed.

Desotell completed and signed the application. He gave Frank a check for $67.00 —the premium for the first two months of the policy. Frank bound coverage as of 1:30 p.m. on February 18, 1977 and so noted in the lower left corner of the application. The parties had no discussion with regard to the terms on which the check was given by Desotell and accepted by Frank. In his affidavit Frank stated that he "presumed the check would be paid when presented to the bank" and that he and Desotell "had no agreements as to when or in what manner to negotiate the check." The only writing evidencing the check transaction is the combination of application and binder. It contains no language concerning the mode of payment, nor does it condition the existence of coverage under the binder in any way.

Desotell's check was presented to his bank for payment on February 22, 1977, the next banking day. Desotell claims that on that date he had $1,400 in his checking account. However, this balance consisted primarily of checks drawn on out-of-town banks and these had not yet cleared. The bank dishonored Desotell's check and returned it to Statewide with the notation "uncollected funds." Statewide received the notice of dishonor on February 28, 1977 and sent the following note to Desotell:

The check for your automobile insurance with our company is returned herewith. This check was uncollectable from the bank, who (sic) returned it to us marked "insufficient funds".[1]

---

1. It should be noted at this point that, as established by the affidavit of an officer of the bank, there is a significant difference between "uncollected funds" and "insufficient funds." Desotell's check was returned to Statewide marked "uncollected funds," not "insufficient funds," as was indicated in Statewide's notice of 2/28/77. The notation "uncollected funds" means that funds have been deposited in the account but that the bank has not yet collected the funds. The notation "insufficient funds" means "that there are inadequate funds in the relevant ac-

count to cover the check." The significance of this distinction, as noted in an affidavit of record, is that the usual process followed where checks are not honored because of "uncollected funds" is resubmittal of the check to the bank rather than return to payor.

There is nothing in the record, nor any allegation by Statewide, that Desotell knowingly or *intentionally* paid the $67.00 premium with a check which he knew or suspected would not be honored by the bank. On the record before us

It is now impossible for us to issue automobile insurance for you and must ask that you contact your agent, Reuben E. Frank, ... if other arrangements are necessary.

On March 1st Desotell and Dewar were involved in the automobile accident in which Irene Dewar was injured. On either March 2nd or March 3rd Desotell received the message quoted above.

Mrs. Dewar evidently sustained serious injuries; her medical expenses allegedly exceed $30,000. Dewar sued Desotell; Statewide disclaimed coverage for Desotell, leaving him "uninsured" with respect to the Dewar claim. Dewars made a claim under the uninsured motorist provisions of their insurance policy and were paid $15,000 by their insurer, Continental Casualty Co. As subrogee, and in Dewar's name, Continental brought an action against Desotell for recovery of the uninsured motorist payment. *See* A.R.S. § 20–259.01(G). Desotell claimed that he was covered by Statewide with respect to this action, and the declaratory judgment action by Statewide against Desotell and Dewar followed.

The present argument, at least in part, is between the two insurers. Having paid $15,000 under its uninsured motorist coverage, Continental argues that Statewide should have paid the loss under the binder for liability coverage issued to Desotell. All parties acknowledge that the liability policy for which Desotell applied was not issued, so that if there is coverage by Statewide it can be based only on the binder. Two issues are raised by the facts. The first is whether the binder went into effect or whether it was void because dishonor of the check was either a failure of consideration or a condition subsequent. If the binder did go into effect, the second issue is whether the coverage bound was terminated prior to the time of the accident.

Both sides moved for summary judgment. Both sides agreed that there was no disputed issue of fact. Each claims that it

was entitled to judgment as a matter of law. The trial court found for Statewide. In pertinent part, its judgment reads as follows:

The document issued by ... Statewide ... was an application for insurance on behalf of defendant Loren J. Desotell; That automobile liability insurance coverages insuring the said defendant Loren J. Desotell did not go into effect until payment of the required premium; That payment of the required premium was never made; ...

Dewar appealed. Conceding that Desotell's policy had never been issued and that coverage under that policy never went into effect, Dewar argued, nevertheless, that coverage had been effected under the binder issued at the time the check for the premium payment on the policy was delivered to the agent. Dewar contends that such coverage did not terminate until the day after the accident, when Desotell received the message from Statewide informing him of the dishonor of the check and consequent rejection of his application for insurance. The majority of the court of appeals rejected this reasoning and stated "that when the check is dishonored there is a failure of consideration, relieving the other party from liability...." 143 Ariz. at 577–578, 694 P.2d at 1191–92. Characterizing Dewar's argument as "a rather ingenuous legal theory relating to some imagined 'special' law pertaining to insurance binder contracts" (*id.* at 578, 694 P.2d at 1192), the court held that where the agent has "required the actual present payment of the premium as consideration for the extension of binder coverage" (*id.* at 579, 694 P.2d at 1193) neither the binder coverage nor the policy coverage goes into effect until the payment required has actually been made. We do not disagree with this portion of the court's legal analysis, but find it inapplicable to the uncontroverted facts of this case.

and the trial court, this is not a case in which the named insured attempted to obtain insur-

ance without paying the premium, and Statewide has made no allegation to that effect.

## NATURE OF A BINDER

 Binders have been referred to as contingently accepted applications for insurance. *Turner v. Worth Ins., Co.,* 106 Ariz. 132, 134, 472 P.2d 1, 3 (1970). A binder is simply a contract made in contemplation of the issuance of a later, formal agreement of insurance. The binder incorporates by implication all the terms of the policy to be issued. *Id.* at 133, 472 P.2d at 2. Thus, the binder is a contract of temporary insurance, effective as of the date agreed upon by the parties, issued and in effect pending investigation of the risk and until a formal policy is written. *Id.* Consideration for the binder is the insured's promise to purchase the policy. No other or independent consideration is required, *although, of course, parties may agree on conditions* for issuance of the binder. *Rutherford v. John O'Lexey's Boat & Yacht Ins.,* 118 Ariz. 380, 576 P.2d 1380 (App.1980); 12A Appleman, *Insurance Law and Practice,* § 7228, at 154–55 (1981). As a matter of public policy, however, the insurer is not allowed to make the binder effective only on the condition that the policy is subsequently issued, since this would place the insurer in a position to destroy the utility of the binder by refusing to issue the formal policy when it discovers that a loss has occurred while the binder was supposedly in effect. *Turner v. Worth,* 106 Ariz. at 536, 472 P.2d at 5; *Rutherford v. John O'Lexey's,* 118 Ariz. at 382, 576 P.2d at 1382.

*Turner* and *Rutherford* are worth comparing. In *Turner,* the parties expressed an intent that the binder issue as temporary insurance and we held that such intent could not be nullified by the insurer's argument of an unexpressed, implied condition permitting it to later nullify the binder by refusing to issue the permanent policy. 106 Ariz. at 136, 472 P.2d at 5. In *Rutherford,* there was an agreement that the binder be issued on the explicit condition that the insured post his application and

check on the next business day. 118 Ariz. at 382, 576 P.2d at 1382. Both cases, therefore, stand for the well-recognized proposition that binders are separate contracts of temporary insurance and come into effect in accordance with the intent of the parties. This, indeed, is one area of the law of insurance where the law has always recognized that the expressed intent of the parties governs and the "deal is dickered." [2] *See Darner v. Universal Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984).

 With these principles in mind, we turn to the facts of the case at bench. The affidavit indicated that Frank "presumed" that the check would be good and that the insurance would be effective on that condition. On the other hand, it was Desotell's "understanding" that he had immediate coverage under the binder and he had funds in the bank. There was no discussion of the check nor any statement made with respect to whether the giving and acceptance of the check would constitute payment of the premium and discharge the debt (leaving the creditor only with the right to secure payment of the check), or whether the giving of the check was a conditional payment, becoming absolute upon the check being honored. *See* H. Bailey, *Brady on Bank Checks,* § 4.4 at 4–9 (5th Ed.1979) The agent stated in this supplemental affidavit that the issuance of the binder pending the writing of the policy was "predicated upon [the] check in payment of the [policy] premium due being good." However, this was not the deal which the agent made with the insured, nor the intent expressed in the papers the agent prepared at the time of the transaction. The only thing expressed at the time of the transaction was the agent's notation, in his own handwriting, that the binder would be effective as of 1:30 p.m., February 18. At best for the insurer, the affidavit indicates only that the agent had an *unexpressed* understanding different from

---

**2.** *One reason for this, no doubt, is that a binder is usually issued orally or in memo form. The law implies adoption of the "usual clauses." 12A Appleman, supra, § 7232. What is in con-* troversy usually is existence, effective date, or limits—all matters of specific contract rather than standardized forms.

that which he wrote at the time of the transaction. The affidavits, carefully avoid stating that the agent manifested his "presumption" or his "predicate" for issuing the binder by expressing it in any way. We do not believe that unexpressed intent of either party may be given effect over their expressed intent. The rule is that "it is not the undisclosed intent of the parties with which we are concerned, but the outward manifestations of their assent." *Isaak v. Massachusetts Indemnity Life Ins. Co.*, 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981). The parties here did make an outward manifestation of their intent. The portion of the application concerning the effective date of the binder was not a printed provision in a previously prepared form. It was, rather, a blank to be filled in. That blank, filled in by Statewide's agent, explicitly provided that coverage would be bound and go into effect immediately.[3] There is no indication here that the parties bargained for a different deal or had agreed upon a different effective date. *Cf, Darner v. Universal, supra.* In the absence of such evidence the expressed intent of the parties should govern. *Isaak v. Massachusetts, supra.* Upon completion of the form, the insured would have left the office justifiably assuming he was bound and covered pending consideration of his application for issuance of the permanent policy. If the insurer had intended to make the effective date of the binder conditioned upon the check being honored or upon any other event, it should not have made the binder effective immediately or should have provided for some condition in the binder. *Cullotta v. Kemper Corp.*, 78 Ill.2d 25, 31, 34 Ill.Dec. 306, 309, 397 N.E.2d 1372, 1375 (1979); *Dairyland Ins. Co. v. Kankelberg*, 368 F.Supp. 996, 998 (D.C.Or.1973); *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo.1969).

*Bartleman, supra*, is instructive. It holds that the insurer has the right to treat the check as conditional payment, making the insurance effective immediately, or to make issuance and effectiveness of the binder conditional on the check being paid. The intent of the parties in this respect is controlling. *Id.* at 343–44. In *Kankelberg, supra*, the policy to be issued contained an express provision conditioning the effectiveness of the insurance on the payment of the premium, but the binder provided for immediate coverage. The court held that the insurance granted by the binder came into existence and was effective, even though the check was later dishonored because payment was stopped.

*Cullotta, supra*, discusses three lines of authority. One, which it describes as a majority, holds that the check issued for payment of the premium acts as an absolute satisfaction of the obligation to pay the premium, leaving the policy effective and the insurer free to pursue its remedies under negotiable instruments law. *Id.* 78 Ill.2d at 29, 34 Ill.Dec. at 308, 397 N.E.2d at 1374. Some courts "have focused on the question of whether the insurer intended the acceptance of the check to be absolute or conditional." A third rule views the "determinative issue as one of waiver" if it is "found that the insurer intended to accept the premium check as absolute payment." *Id.*

**3.** The provision appears as follows:

> I warrant this information to be true and correct, and understand that the company is relying thereon in rating and issuance of this policy. I understand that misrepresentation on my part will void the proposed insurance contract. I have read the foregoing statement and declare it to be true.
> It is the responsibility of the agent to be certain that this application is received by Statewide.
>
> APPLICANTS SIGNATURE
>
> AGENT SIGNATURE
>
> COVERAGE BOUND
> DATE TIME
> 2/18 1:30 PM
>
> **PREMIUM FINANCE CONTRACT ON REVERSE SIDE**

The result under both approaches is that, absent fraud on the part of the insured, once the insurer accepts the check without evidencing an intent to do so conditionally, it can no longer exercise its right to declare the policy lapsed due to nonpayment, even though the check is later dishonored.

*Id.* at 29–30, 34 Ill.Dec. at 308–09, 397 N.E.2d at 1374–75 (emphasis supplied); *see also Butt v. State Farm Mutual Automobile Ins. Co.,* 107 Ill.App.3d 68, 72, 62 Ill. Dec. 819, 822, 437 N.E.2d 346, 349 (1982).

Thus, the cases do not turn upon the attempt of the judge to read the minds of the parties and determine what they must have meant with regard to the effective date of insurance in those cases where payment of the policy premium is demanded at the time the binder is issued, and where that payment is made by check. Rather, the cases turn, as they should, on the expressed intent of the parties with regard to the effective date of the binder. The agent's unexpressed presumptions cannot be used to contradict the plain meaning of what was expressed and agreed upon. *Turner v. Worth, supra.* Here, the parties did agree upon an effective date for the binder, though not for the policy. The agreement was not set forth in some preprinted form which was neither read nor understood. *See Darner v. Universal, supra.* It was, rather, written into a blank provided for that purpose. In the absence of any claim of mistake or fraud, we must assume that the parties meant just what they said, that the coverage bound would be effective as of 1:30 p.m. on February 18, 1977. By agreement, Desotell had insurance as of that moment. By decisional law

(*Turner v. Worth Ins. Co., supra.*), and by statute (A.R.S. § 20–1120(B)), the binder would terminate on the issuance of the policy.

Upon dishonor of the check given for the policy premium, Statewide had several options. First, it could have presented the check again for payment; second, it could have proceeded to issue the policy and enforced the insured's promise to pay by action on the check. *See* A.R.S. § 44–2550. Finally, it could have refused the application for insurance and cancelled coverage under the binder—retaining the right to collect for any temporary coverage that it had already extended under the binder. It cannot contend that no insurance ever existed under the binder. *Dairyland Ins. Co. v. Kankelberg,* 368 F.Supp. at 998. We hold, therefore, that coverage under the binder became effective in accordance with the terms contained therein and was not voided *ab initio* when the check was later dishonored.[4]

## WHEN WAS NOTICE OF TERMINATION EFFECTIVE

Statewide's notice of rejection of the application for insurance was mailed to Desotell the day before the accident and received by him the day after that accident. Under A.R.S. 20–1120(B), a binder terminates on issuance of the policy applied for or within ninety days, whichever is sooner. By decisional law, the general rule is that a rejection of the application for insurance terminates the binder. This is because the binder is temporary insurance granted until the company acts upon the application.

**4.** In reaching this decision we do not create a "special law" of contracts pertaining to insurance binders as feared by the court of appeals. The same fundamental law of contracts applies to both binders and insurance policies. We simply recognize that the binder and the policy are two different contracts. One is a contract for temporary insurance and the other is the contract for permanent insurance. This distinction is recognized by case law and statute. *See* A.R.S. § 20–1120 and § 28–1170. A.R.S. § 20–1120 distinguishes the binder from the policy and states that the binder shall not be valid beyond the date on which the policy is issued. A.R.S. § 28–1170 requires that a binder "... issued pending the issuance of a motor vehicle liability policy shall be deemed to fulfill the requirements for such a policy." A.R.S. § 28–1170(K). *See also Greene v. Commercial Union Ins. Co.,* 136 Ga.App. 346, 347–48, 221 S.E.2d 479, 481 (1975). Because we resolve the issue of effectiveness on a contract basis, according to the expressed intent of the parties, we need not reach issues which may be raised under the financial responsibility laws.

12A Appleman, *supra*, § 7227 at 145–151. It is also generally recognized that the notice of rejection or refusal, with its implicit termination of the binder, is effective only when received by the insured. *State Farm Mutual Auto Ins. Co. v. Collins*, 75 Ga.App. 335, 341, 43 S.E.2d 277, 282 (1947); *Smith v. Westland Life Ins. Co.*, 15 Cal.3d 111, 121, 123 Cal.Rptr. 649, 656, 539 P.2d 433, 440 (1975) (life insurance); Annot., *Temporary Automobile Insurance*, 12 A.L.R.3d 1306, (1967). We adopt this principle, which seems generally recognized in the cases, as the law of Arizona. Any other rule would either leave the insurer with an unacceptable risk for up to ninety days or leave the expectant insured unaware that his application has been rejected and that he is driving while uninsured. Such a situation would be contrary to the principles which we expressed in *Schecter v. Killingsworth*, 93 Ariz. 273, 280 n. 3, 380 P.2d 136, 141 n. 3 (1963).

Resolving the notice issue on these grounds, we need not examine the interplay between A.R.S. § 20–1631, which limits the grounds for which an insurer can cancel or fail to renew a policy which has been in effect for sixty days; A.R.S. § 20–1632, which specifically addresses the issue of notice to insureds and contains no distinction between ordinary policies and binders; and A.R.S. § 28–1170(K), which states that "[a] binder issued pending the issuance of a motor vehicle liability policy shall be deemed to fulfill the requirements for such a policy."

■ We hold, therefore, that because Desotell had not yet received notice that his application had been rejected, the binder which went into effect on the date set forth in the application was still in effect at the time of the accident. Desotell was insured by Statewide at that time for the agreed limits of the binder. The terms of coverage were those terms customarily contained in Statewide policies. See *Turner v. Worth Ins. Co.*, 106 Ariz. at 133, 472 P.2d at 2.

The trial court erred in granting summary judgment to Statewide and denying summary judgment to Dewar. The judgment of the trial court is reversed, the opinion of the court of appeals is vacated and the cause is remanded to the superior court for further proceedings consistent with this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting.

It seems basic to me that people must pay for what they purchase whether it be goods, automobiles, or insurance. A check given in payment of goods is accepted with the expectation that the check will be honored by the bank. Our commercial code recognizes that payment by check is conditioned and does not act as payment unless honored by the bank. A.R.S. § 44–2359.

The court's opinion adopts a line of authority which holds that payment for insurance is different from the usual transaction and different rules apply.

The majority opinion of the Court of Appeals in this case appears to me to present the more sensible legal position. I adopt the opinion of the majority in the Court of Appeals and dissent from the opinion of this court.

The opinion of this court has not advanced any sound policy reason against treating payment by check as a conditional payment which voids a binder or insurance policy if the check is dishonored by the bank.

The acceptance of a check as conditional payment does no violence to the concept of insurance protection. The honoring of the check is a condition subsequent to the creation of the insurance contract. The majority in this court recognizes the legality of conditions subsequent in an insurance binder when it cites with approval *Rutherford v. John O'Lexey's Boat & Yacht Ins., Ltd.*, 118 Ariz. 380, 576 P.2d 1380 (App.1978). The insurance binder in *Rutherford* was effective provided the insured submitted a completed application on July 9. The insured had an accident on July 8, and he failed to submit the completed application

on the 9th. The denial of coverage by the insurance company was upheld.

It seems consistent to hold that the insurance policy in this case was subject to the condition subsequent that the insured's check in payment be honored by his bank.

The majority in this court rely mainly on two cases. *Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo.1969), and *Cullotta v. Kemper Corp.*, 78 Ill.2d 25, 34 Ill.Dec. 306, 397 N.E.2d 1372 (1979). Although a federal district court case is also cited, I doubt that the majority means to place much reliance on a decision by a federal trial court. In any event, the cited cases support the proposition that the classification of the acceptance of a check as absolute or conditional payment is determined according to the facts and circumstances surrounding the transaction and is a question of fact to be determined by the trier of fact.

Unfortunately, the majority in this case ignores its cited cases and proceeds to decide the disputed issues in the case. The fact that the binder had an effective date was found to be conclusive proof that the check was not accepted conditionally.

In both *Bartleman* and *Cullotta* an insurance policy had been issued in each instance and checks processed as cash premiums, but those courts held that proof of the insurer's intent at time of acceptance is an issue to be submitted to the trier of fact. The rule in Arizona has been that even if the facts of a case are not in dispute, the inferences to be drawn from those facts may be in dispute. If different inferences can be drawn from the facts, the issues may not be resolved by summary judgment, and the issues must be submitted to the trier of fact. *Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 519 P.2d 61 (1974).

The evidence presented by the insurance company was that the transaction involved an application for insurance for a two month period. The applicant was not a regular customer, and there was no intention to extend credit to him. Payment was required for the entire two month policy. The affidavit of the agent handling the transaction was to the effect that the applicant, not being a regular customer, was given a binder pending issuance of the policy "predicated upon his check in payment of the premium due being good upon presentation to his bank." In light of these facts it appears to me that different conclusions could be reached from a consideration of all the facts, and this court, following its cited authority, should have remanded the case for trial.