## 51177. GREENE v. COMMERCIAL UNION INSURANCE COMPANY.

Argued September 29, 1975 — Decided October 24, 1975.

*Spence & Knighton, Judson R. Knighton,* for appellant.

*Long, Weinberg, Ansley & Wheeler, J. Kenneth Moorman, Edward C. Stone,* for appellee.

DEEN, Presiding Judge.

■ "Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given," and are valid for 90 days. Code § 56-2420. It must be a contract in praesenti ( *Fort Valley Coca-Cola Co. v. Lumbermen's Mut. Cas. Co.,* 69 Ga. App. 120 (24 SE2d 846)) and the actual payment of premium is not a condition precedent to its validity. Pa. Cas. Co. v. Upchurch, 139 F2d 892. The language or conduct necessary to create the contract is simply that which is enough to show that there has been a meeting of the minds. "The most common expression used by agents is, 'You're covered,' but anything from the contraction 'O.K.' to a receipt for premiums may constitute a binder if the circumstances would lead a reasonable man to conclude such was the intention." 12 ALR3d, pp. 1304, 1314, Temporary Automobile Insurance § 5. (b), and cits. From these it is clear that even such terms as amount of premium and kind and limits of insurance may be inferred from the course of dealing between the parties, and where a broker is accustomed to "insuring" the owner's automobiles it may be

presumed that a request for insurance means insurance of the kind and amount habitually purchased.

While on the trial of a case the burden is on the plaintiff to prove every essential element of the binder contract, on motion for summary judgment the inferences run the other way. The testimony of the plaintiff, which was strongly contradicted by the broker's agent, was that the plaintiff (who had dealt with the agent in procuring insurance for three other automobiles in the prior six-month period), called and placed the insurance on the new car. Her testimony is as follows: "Q. What did she tell you? A. She told me that — I told her I wanted to get insurance on it because I was going to my mother's and daddy's, because my daddy was sick, and she said we will wait until you get back and I will have it all fixed up. She said, you will have insurance. . . Q. Am I correct that you did not give any notice to Commercial Union Insurance Co. or to J. F. Shaw's Agency or to anybody else that you had bought that '73 Dodge Charger insofar as insurance for that car was concerned? A. Yes, I had. Q. You did? A. Yes, I did. Q. Tell me about that. A. I talked to Gloria Young about the Dodge and I was fixing to go out of town and she told me to wait until I come back before she wrote up the policy for me. It would be insured. Q. When did you talk to her? A. I talked to her when I got the Dodge. Q. On June 26? A. I got the Dodge on Tuesday and on that afternoon I talked to her about it, about getting the insurance on the Dodge."

The difficulty with this testimony of course is that the statements, "She said you will have insurance" and "[she said] it would be insured" might be in reference to an eventual policy, or taken in connection with the plaintiff's testimony that she informed the agent she was leaving on a trip to see a sick parent, might carry the inference that immediate coverage was being promised although the policy would not be written up until her return. "[E]vidence must be construed most favorably to the party opposing the motion for summary judgment even though the testimony may be vague and contradictory." *Gregory v. Vance Pub. Corp.*, 130 Ga. App. 118 (2) (202 SE2d 515). *Burnette Ford, Inc. v. Hayes*, 227 Ga. 551 (181 SE2d 866) holds that this rule applies even

to self-contradictory and equivocal testimony of the plaintiff himself offered in his own behalf. It is therefore a jury question as to whether the minds of the parties met both on the insurance offered and the time of inception. Further, while it is true that the plaintiff carried insurance through this broker with two companies, she testified positively that the agent stated the policy would be written through Commercial Union, the defendant here. It was error to grant summary judgment on the theory that as a matter of law no insurance binder existed.

■ The extant insurance policy on Mrs. Greene's Chevrolet covered an "owned automobile," which by definition includes the insured vehicle, an automobile acquired during the life of the policy if (1) it replaces the owned automobile or (2) for 30 days after acquisition if all vehicles owned by the insured are covered by the company, and (3) a temporary substitute automobile if *not* owned by the insured. This vehicle can only be covered under the policy as written if it *replaced* the insured Chevrolet. It was obviously used in its stead during the four months the Chevrolet was in the garage. Thereafter Mrs. Greene kept both vehicles. A proper construction of this language is that *replacement* means a permanent progression by which the insured parts with one vehicle and elects to put another in its place. If this arrangement is temporary, then the added vehicle is not a replacement but a temporary substitute. If both cars are retained, coverage depends not on temporary replacement but on blanket coverage. A mere intention to replace does not constitute a replacement. *LaSalle Nat. Ins. Co. v. Popham,* 125 Ga. App. 724, 733 (188 SE2d 870). A substitute automobile owned and used by the insured while the insured vehicle is being stored or repaired, where the latter is retained and eventually returned to service, is generally held not to be a replacement. Nationwide Ins. Co. v. Ervin, 231 NE2d 112; Luckett v. Cowser, 159 NW2d 94 (Wis.). The plaintiff cannot proceed on the theory that the car in question was covered by the policy in effect on the previously acquired Chevrolet.

The trial court erred in granting the defendant's

motion for summary judgment.

*Judgment reversed. Evans and Stolz, JJ., concur.*