**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 1, 2013**

# In the Court of Appeals of Georgia

A13A1566. GEORGIA FARM BUREAU MUT. INSURANCE CO.    MI-121
v. T & G ENTERPRISES, INC.

MILLER, Judge.

T & G Enterprises, Inc. ("T & G") sought insurance coverage on certain real property located in Dalton, Georgia. Georgia Farm Bureau Mutual Insurance Co. ("Georgia Farm") issued an insurance binder on the property through its local agent. Prior to issuance of the actual insurance policy, a theft occurred on T & G's property. When T & G filed a claim for the theft, Georgia Farm denied coverage for the loss. T & G filed suit for breach of contract, and the parties subsequently filed cross-motions for summary judgment. The trial court denied Georgia Farm's motion for summary judgment and granted T & G's motion for partial summary judgment, finding that the theft exclusion, upon which Georgia Farm relied in denying coverage,

was inapplicable because it was part of an endorsement that was not included in the insurance binder issued to T & G. Georgia Farm filed the instant appeal to challenge the trial court's rulings. Because we find that a question of fact remains regarding whether the insurance binder issued to T & G provided coverage for losses due to theft, we reverse in part.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant. Id.

So viewed, the evidence shows that T & G was in the rental property business. T & G had an existing Georgia Farm commercial package policy. When T & G purchased a rental property, it always obtained a Georgia Farm insurance binder adding the property to its policy prior to closing. The insurance binders stated the type of coverage, the amount and the deductible, and were effective to bind coverage for 30 days.

On October 19, 2006, T & G purchased real property, including three 4-unit apartment buildings, located in Dalton, Georgia. Prior to closing, T & G contacted

2

Georgia Farm's agent and requested an insurance binder on the Dalton property. The agent issued a Georgia Farm insurance binder for $250,000 in property coverage on the Dalton property. Under the type of property insurance, the binder specifically stated "Commercial Package Policy."

On October 26, 2006, T & G discovered that unknown persons had entered the Dalton property, removed all wiring and copper from the apartments and stolen several appliances, including refrigerators and air conditioners. T & G faxed the incident report to Georgia Farm's agent, who gave it to the claims person at Georgia Farm's Dalton office. The agent informed T & G that theft was not a covered peril under T & G's policy and, based on a field inspection, Georgia Farm could not insure the property in its present condition.

On appeal, Georgia Farm contends that the trial court erred in denying its motion for summary judgment and in granting partial summary judgment to T & G because the applicable policy did not provide coverage for T & G's theft loss.

"In general, contracts for insurance must be in writing and may not be partially parol. A binder or other contract for temporary insurance is an exception to this general rule and may be either oral or written." (Citations and punctuation omitted.) *Thomas v. Union Fidelity Life Ins. Co.*, 168 Ga. App. 267, 268 (1) (308 SE2d 609

3

(1983), aff'd, 252 Ga. 259 (312 SE2d 333) (1984). OCGA § § 33-24-33 is the controlling statutory authority with regard to insurance binders. That statute pertinently provides:

> (a) Binders or other contracts for temporary insurance may be made orally or in writing and *shall be deemed to include* all the *usual terms* of the policy as to which the binder was given *together with any applicable endorsements that are designated* in the binder, except as superseded by the clear and express terms of the binder.

> (b) No binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond 90 days from its effective date, whichever period is shorter[.]

(Emphasis supplied.) OCGA § § 33-24-33. Insurance Binders

> are intended to provide temporary protection *pending an investigation of the insured or pending issuance of the formal written policy* providing the *coverage requested by the insured*. The insurance binder is a contract created for the convenience of the insured to provide immediate insurance coverage without subjecting the insured to risk of loss occasioned by a delay in effecting coverage. *The only language or conduct necessary to create an insurance binder contract is that which shows a meeting of the minds.*

(Citations omitted; emphasis supplied.) *McDuffie v. Criterion Casualty Co.*, 214 Ga. App. 818, 819-820 (449 SE2d 133) (1994). Insurance binders are governed by the ordinary rules of contract construction and should be construed to ascertain the intent of the parties. See id.

Here, the binder indicates on its face that the permanent property insurance policy that would have been issued would have been a Commercial Package Policy. The policy in the record provides:

> We will pay for direct physical loss of or damage or damage to Covered Property at the premises described in the Declarations caused by or resulting from any *Covered Cause of Loss*.

Emphasis supplied.[1] There is no Declarations page in the record. The binder, however, listed three policy form options for covered "Causes of Loss" — "Basic," "Broad" and "Special," and both the Basic and Broad form options for covered Causes of Loss in the record provide:

> . . . *Covered Causes of Loss* means the following:

---

[1] Georgia Farm presented affidavit testimony stating that this policy would have been the policy issued pursuant to the binder, and it relies on this policy in support of its motion for summary judgment.

5

. . . We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

The binder does not indicate which of the three Causes of Loss form options—Basic, Broad or Special—was included in the bound insurance coverage. Nevertheless, Georgia Farm contends that the policy applicable to the binder would have included either the Basic or Broad Causes of Loss form, both of which exclude coverage for theft. As the trial court properly found, however, the instant case concerns a binder, not a formal policy of insurance.[2] Under OCGA § § 33-24-33 (a), for either the Basic or Broad Causes of Loss policy form options to be considered as having been included in the binder, the applicable form needed to be designated in the binder that Georgia Farm gave to T & G. Since neither of these policy form options was designated in the binder, Georgia Farm cannot rely upon them as a basis for asserting that the theft of T & G's property was excluded from coverage under the usual terms of the policy as to which the binder was given. See OCGA § § 33-24-33.

---

[2] In so holding, the trial court relied on this Court's decision in *Intl. Indem. Co. v. McKeever*, 174 Ga. App. 871 (331 SE2d 909) (1985), which is physical precedent only.

Our analysis does not end there, however, because the usual terms of the policy as to which the binder was given may be inferred from the parties' oral communications and their past dealings. See *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814, 816 (2) (520 SE2d 494) (1999); *Greene v. Commercial Union Ins. Co.*, 136 Ga. App. 346, 347 (221 SE2d 479) (1975).

Here, the evidence shows that T & G had existing Georgia Farm coverage on its other rental properties, when Georgia Farm issued the binder on T & G's Dalton property. Georgia Farm's agent testified in his deposition that T & G's existing coverage included a commercial package policy that provided liability only coverage for its rental properties, as well as basic fire coverage. The agent further testified that T & G requested the *same* coverage for the Dalton property that it had on its other properties. Georgia Farm also presented affidavit testimony stating that, with regard to the Commercial Package Policy it relies on, neither the Basic nor the Broad Causes of Loss form options provide coverage for theft, and the Special Causes of Loss form option would not have applied in this case because of the age of the property and the use of the property as apartments.

T & G presented the testimony of its bookkeeper, who confirmed that T & G had two policies with Georgia Farm, and each time T & G bought a piece of property

it procured a binder providing the same coverage it had on its other properties. The bookkeeper further testified that T & G had both liability and property coverage.

When viewed in the light most favorable to each party as the nonmovant in the parties' cross-motions for summary judgment, a question of fact remains regarding whether T & G's insurance on its other properties provided coverage for property losses due to theft. If T & G's existing insurance covered losses due to theft, then the usual terms of the policy as to which the binder was given also covered theft based on the parties' past dealings. See OCGA § § 33-24-33; see also *Parks*, supra, 238 Ga. App. at 816 (2); *Greene*, supra, 136 Ga. App. at 347. Accordingly, we reverse the trial court's grant of partial summary judgment to T & G on the issue of whether the binder excluded coverage for theft. We affirm the denial of summary judgment to Georgia Farm for the same reason.

*Judgment affirmed in part and reversed in part. Phipps, C. J., and Ellington, P. J., concur.*